[No. 18241–2–I.   Division One.   September 8, 1987.]

WASHINGTON INSURANCE GUARANTY ASSOCIATION, *Respondent,* v. CALVIN ROSS HICKS, ET AL, *Defendants,* J.R., ET AL, *Appellants.*

*Robert M. Sifferman* and *Carrithers & Sifferman,* for appellants.

*Arnold J. Barer* and *Weckworth, Barer & Meyer,* for respondent.

WEBSTER, J.—J.R. appeals the order granting summary judgment for the American Druggist's Insurance Company (ADIC). She contends that the trial court erred when it found that the malpractice insurance policy in question did not cover a sexual incident which occurred during a visit to her chiropractor. We affirm.

## PROCEDURAL HISTORY

On June 24, 1984, J.R. filed suit against Dr. Hicks alleging professional malpractice and misconduct, breach of fiduciary duty, and outrage. ADIC agreed to defend that action under a reservation of rights. In June 1985, ADIC filed a complaint for declaratory judgment, naming J.R. and Dr. Hicks as defendants. It asked the court to declare that J.R.'s claim against Dr. Hicks was not covered by the insurance policy.

Both sides moved for summary judgment. ADIC's motion for summary judgment was granted. Because ADIC was later placed in conservatorship, the Washington Insurance Guaranty Association (WIGA) was substituted for ADIC on J.R.'s appeal. Dr. Hicks does not appeal.

## FACTS

Dr. Hicks, a chiropractor licensed to practice in the state of Washington, had been treating J.R.'s back pain and related ailments for about 3 years. On September 7, 1983, Dr. Hicks gave J.R., who was 19 years old, a general full spinal adjustment and told her that she needed a good massage for her tight muscles. He suggested that she come back on a Saturday when he would have more time to work with her.

On Saturday, September 17, 1983, Dr. Hicks saw other patients before seeing J.R. No office staff was in the clinic that day. Dr. Hicks usually conducted office hours on Saturday without office staff because he would see fewer patients and thus could handle the office by himself. During his treatment of J.R., Dr. Hicks gave her a massage and then made sexual advances toward her. After telling her that "[i]f you want to quit, we'll quit right now," Dr. Hicks

had sexual intercourse with J.R. He did not expect to have sexual intercourse with her that day.

J.R. discussed the matter with a friend the next day, and with her mother and the Rape Crisis Center the following Thursday. A Rape Crisis Center worker asked J.R. whether she had been raped. She answered, "And that was the first time I really put a word to it, and said yes."

According to J.R. the King County prosecutor declined to prosecute Dr. Hicks because the case was not strong enough. In October 1983 a complaint was made to the Chiropractic Licensing Disciplinary Board. As a result of the Board's investigation of the matter, Dr. Hicks' license was suspended. As a condition of its reinstatement, he was required to obtain counseling.

At the time of the incident, Dr. Hicks was covered by an insurance policy issued by ADIC. The policy provided:

> The company will pay on behalf of the insured:
>
> . . .
>
> All sums which the insured shall become legally obligated to pay as damages because of injury to which this insurance applies, caused by a medical incident which occurs during the policy period, in the practice of the insured's profession as a physician, surgeon or dentist including service by the insured as a member of a formal accreditation, standards review or similar professional board or committee.
>
> Exclusions
> This insurance does not apply:
> (a) to injury arising out of the performance by the insured of a criminal act;
>
> . . . "[M]edical incident" means any act or omission in the furnishing of professional medical or dental services:
>
> . . .
>
> Any such act or omission together with all related acts or omissions in the furnishing of such services to any one person shall be considered one medical incident.
>
> V. INSURED'S DUTIES IN THE EVENT OF A
> MEDICAL INCIDENT, CLAIM OR SUIT
> The insured shall give written notice to the company as soon as practicable of any claim made against the insured

or of any specific circumstances involving a particular person likely to result in a claim. The notice shall identify the insured and contain reasonably obtainable information with respect to the time, place and circumstances of the injury, including the names and addresses of the injured and of available witnesses.

## STANDARD OF REVIEW

On review of summary judgment, the appellate court engages in the same inquiry as the trial court. The motion can be granted only if the pleadings, affidavits, depositions, and admissions on file demonstrate that there is no genuine issue as to any material fact. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). The court must consider all facts submitted and all reasonable inferences from the facts in the light most favorable to the nonmoving party. The motion should be granted only if, from all the evidence, reasonable persons could reach but one conclusion. *Barrie v. Hosts of Am., Inc.,* 94 Wn.2d 640, 642, 618 P.2d 96 (1980); CR 56(c).

## DISCUSSION

██ ██ J.R. argues that because the language of the insurance policy is very broad, it covers the sexual act of the insured doctor. She maintains that policy language in the cases cited by WIGA differs from the language of the policy at issue. However, we conclude that the distinction is one without a difference. Insurance contracts should be interpreted with respect to the policy as a whole, not in terms of isolated segments. *United States Fire Ins. Co. v. Roberts & Schaefer Co.,* 37 Wn. App. 683, 686–87, 683 P.2d 600 (1984). The "any act or omission" and "together with all related acts or omissions" language is modified by the phrase "in the furnishing of professional medical . . . services". Thus the broad language of "any act or omission" is narrowed to acts and omissions *related* to the furnishing of the insured chiropractor's professional medical services. Therefore, J.R.'s argument that the incident is covered simply because it occurred during a scheduled appointment at the insured's place of business is without merit; the rela-

tionship of the incident to the furnishing of professional services is more than one of time and place.

Courts generally hold that medical malpractice insurance policies do not cover the insured physician's sexual contact with patients. *See, e.g., Smith v. St. Paul Fire & Marine Ins. Co.,* 353 N.W.2d 130, 132 (Minn. 1984); *Standlee v. St. Paul Fire & Marine Ins. Co.,* 107 Idaho 899, 693 P.2d 1101, 1102 (Ct. App. 1984); *Hirst v. St. Paul Fire & Marine Ins. Co.,* 106 Idaho 792, 683 P.2d 440, 444 (Ct. App. 1984). In determining whether a particular act involves professional services, courts look to the act itself, rather than the title of the party performing the act or the place where the act occurred. *See Hirst,* 683 P.2d at 444, and cases cited therein. When the physician's sexual conduct is not part of medical treatment, then the malpractice insurance policy does not cover the damages sustained by the plaintiff–victims. *Smith,* at 132.

Malpractice insurance coverage has been allowed in certain cases when sexual contact takes place between a patient and a physician; however, in those cases, the physician has been a mental health therapist or psychiatrist who mishandles the "transference phenomenon". *Simmons v. United States,* 805 F.2d 1363, 1364 (9th Cir. 1986); *Omer v. Edgren,* 38 Wn. App. 376, 381, 685 P.2d 635 (1984); *St. Paul Fire & Marine Ins. Co. v. Mitchell,* 164 Ga. App. 215, 296 S.E.2d 126, 128 (1982); *Cotton v. Kambly,* 101 Mich. App. 537, 300 N.W.2d 627, 628 (1980). The crucial factor in the therapist–patient relationship which leads to the imposition of legal liability for conduct which arguably is no more exploitive of a patient than sexual involvement of a lawyer with a client, a minister with a parishioner, or a gynecologist with a patient is that lawyers, ministers, and gynecologists do not offer a course of treatment predicated upon handling the transference phenomenon. *Simmons,* at 1366, citing A. Stone, *Law, Psychiatry, and Morality* 199 (1984).

Although the insurer of a psychiatrist should reasonably know that the transference phenomenon is an important

aspect of psychiatric treatment, *Zipkin v. Freeman,* 436 S.W.2d 753 (Mo. 1968), the same assumption cannot be made with respect to the insurer of a chiropractor. Moreover, Dr. Hicks admits that the sexual act was not part of his treatment of J.R. A contract of insurance should be given a fair, reasonable, and sensible construction, consistent with the apparent object and intent of the parties—a construction such as would be given the contract by the average person purchasing insurance. *Farmers Ins. Co. v. Clure,* 41 Wn. App. 212, 216, 702 P.2d 1247 (1985). Here, neither ADIC nor Dr. Hicks (the average person buying insurance) would have intended such coverage under the policy issued.

The parties have also raised issues concerning applicability of the exclusion clause, breach of the cooperation clause, and public policy. Because summary judgment was properly granted on the ground that the terms of the policy do not provide coverage of the incident, we do not reach these issues.

Affirmed.

SCHOLFIELD, C.J., and RINGOLD, J., concur.