[No. 11331-7-II.   Division Two.   April 27, 1989.]

THE STANDARD FIRE INSURANCE COMPANY, *Respondent*, v.
GEORGE G. BLAKESLEE, JR., ET AL, *Appellants*.

*George G. Blakeslee, Jr.,* pro se, and *Ben Shafton* and *Morse & Bratt,* for appellants.

*Douglas F. Foley, R. Daniel Lindahl,* and *Bullivant, Houser, Bailey, Pendergrass & Hoffman,* for respondent.

ALEXANDER, C.J.—Carolyn Boose, third party plaintiff in a declaratory judgment action against defendant Blakeslee, appeals an order of summary judgment granted to Standard Fire Insurance Co. (Standard). She contends that the trial court erred in holding that Standard had no obligation as an insurer under its policy of insurance with the insureds, George Blakeslee, Jr., D.M.D., and George Blakeslee, Jr., D.M.D., P.S., a professional services corporation, for damages arising out of a sexual assault upon Boose by George Blakeslee, while Blakeslee was in the course of rendering dental care to Boose. We affirm.

In June 1985, Carolyn Boose sought the dental services of Dr. George Blakeslee. Blakeslee proposed to fill two cavities in her teeth, and as part of the procedure he administered nitrous oxide to Boose. Boose was rendered semiconscious by the drug and while she was in this state, Blakeslee lifted her shirt and fondled one of her breasts. Blakeslee was subsequently charged with, and pleaded guilty to, the crime of indecent liberties arising out of the incident.

Prior to the incident in question, Blakeslee had incorporated his dental practice as a professional services corporation. He was the corporation's sole shareholder, officer, and director. The corporation thereafter executed an employment agreement with Blakeslee. Blakeslee signed the

agreement both as an employee of the corporation and as its president.

At the time of the incident in question, Blakeslee and the corporation were together covered by a policy of insurance with Standard which provided general and professional liability coverage. The general liability portion of the policy provided coverage for bodily injury or property damage caused by an "occurrence" arising out of the use of the insured premises. The insurance contract defined "occurrence" as:

> . . . an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage *neither expected or intended by the insured*; . . .

(Italics ours.)

The professional liability portion of the policy limited coverage to damages for:

> injury . . . arising out of the rendering of or failure to render, during the policy period, professional services by the individual insured, or by any person for whose acts or omissions such insured is legally responsible, . . .[1]

In November 1985, Boose commenced an action against Blakeslee and the professional services corporation for the damages she allegedly sustained as a result of Blakeslee's conduct. Standard subsequently commenced this declaratory judgment action against Boose and Blakeslee in order to obtain a declaration of its rights and duties in connection with the lawsuit by Boose against Blakeslee and the corporation. All parties moved for summary judgment. The trial court granted judgment to Standard, concluding that Standard had no duty to defend or indemnify the insureds (*i.e.*, Blakeslee and the corporation), against Boose's claim. Blakeslee and Boose each moved for reconsideration and the motions were denied.

---

[1]The corporation was added to the professional liability coverage by way of an endorsement which stated that the coverage for the corporation was to be further limited to liability for malpractice, error or mistake.

Boose appeals the order of summary judgment, contending the trial court erred in denying coverage to the corporation under the general liability portion of the policy; and in denying coverage to both Blakeslee and the corporation under the professional liability portion of the policy.

In reviewing a summary judgment, this court makes the same inquiry as did the trial court. *Donald v. Vancouver,* 43 Wn. App. 880, 883, 719 P.2d 966 (1986). In determining whether a summary judgment was properly granted, an appellate court must consider the evidence and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Johnson v. Schafer,* 110 Wn.2d 546, 548, 756 P.2d 134 (1988). Summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c); *Johnson,* 110 Wn.2d at 548. Here, there is no real factual dispute about Blakeslee's conduct nor about his relationship to the corporation. Consequently, resolution of the issue of coverage under the general and professional liability portions of the policy present questions of law properly decided by summary judgment. *See State Farm Gen. Ins. Co. v. Emerson,* 102 Wn.2d 477, 687 P.2d 1139 (1984) (insurance policies are to be construed as contracts, and interpretation is a matter of law).

I

### Coverage Under the General Liability Provisions of the Policy

As noted above, the general liability portion of the policy in question precludes coverage for injuries which are "intended" by the insured. Generally, there must be a showing of a subjective intent to injure on the part of the insured in order for coverage to be excluded under such a clause. *Rodriguez v. Williams,* 107 Wn.2d 381, 729 P.2d 627 (1986). In sexual abuse cases, however, our Supreme Court has held that an intent to injure is presumed as a matter of

law. *Rodriguez,* 107 Wn.2d at 387. Accordingly, Boose concedes that Blakeslee, as an individual, is not entitled to coverage under the general liability portion of the policy.

The exclusion of coverage for Blakeslee as an individual, however, does not necessarily preclude coverage for the corporation which is a separate insured under the policy in question. It is well established that where coverage under a policy of insurance is defined in terms of the "insured," the contract between the insurer and several insureds is to be considered separable, rather than joint; the result being that an act which excludes one insured from coverage does not bar coverage for additional insureds who have not engaged in the same conduct. *Unigard Mut. Ins. Co. v. Spokane Sch. Dist. 81,* 20 Wn. App. 261, 266, 579 P.2d 1015 (1978). Because a corporation exists as an entity distinct from its shareholders, *State v. Northwest Magnesite Co.,* 28 Wn.2d 1, 41, 182 P.2d 643 (1947), Boose contends that Blakeslee's employer (*i.e.,* George Blakeslee, Jr., D.M.D., P.S.), is entitled to coverage under the policy for Blakeslee's act, notwithstanding the fact that Blakeslee, individually, is excluded from coverage. A question on appeal, therefore, is whether the corporation can be said to have expected or intended the injuries inflicted upon Boose by Blakeslee individually so as to preclude coverage for the corporation. For reasons that follow, we conclude that Blakeslee's intent to injure is to be ascribed to the corporation, thus defeating coverage for the corporation under the general liability portion of the policy.

With regard to corporations, Washington long has recognized the "alter ego" doctrine, which provides:

> "'Where a private person so dominates and controls a corporation that such corporation is his *alter ego,* a court is justified in piercing the veil of corporate entity and holding that the corporation and private person are one and the same.'"

*Pohlman Inv. Co. v. Virginia City Gold Mining Co.,* 184 Wash. 273, 283, 51 P.2d 363 (1935). Although this doctrine

most commonly has been invoked to impose personal liability upon corporate officers for fraud committed by a corporation, it also has been recognized as imposing liability on a corporation for individual acts of shareholders who owned all or substantially all of the corporation's stock. In *Roberts v. Hilton Land Co.,* 45 Wash. 464, 88 P. 946 (1907), a shareholder who owned 98 percent of the corporation's stock contracted individually to sell land, title to which belonged in the corporation. The shareholder subsequently attempted to rescind the contract, claiming that the land was owned by the corporation. In denying rescission, the court invoked the alter ego doctrine and compelled the corporation to convey the land to the purchaser. It found that the corporation and the individual were one and the same, and hence the act of the individual was the act of the corporation. *Roberts,* 45 Wash. at 468. This doctrine was similarly applied in *Pohlman Inv. Co. v. Virginia City Gold Mining Co., supra,* to defeat a corporation's claim to enforce a contract which its president, while acting as a trustee of the defendant corporation, consented to cancel. *Pohlman,* 184 Wash. at 273, 283.

Here, the undisputed facts establish that Blakeslee is the corporation's sole officer, director and shareholder. Under these circumstances, Blakeslee clearly is the corporation's alter ego and we conclude, therefore, that his acts were those of the corporation, and vice versa.

Boose contends, however, that to impute Blakeslee's conduct to the corporation is to disregard the corporate entity. She argues that such action is not justifiable unless it can be shown that the corporate form was intentionally used to violate or evade a duty owed to a third person. *See Morgan v. Burks,* 93 Wn.2d 580, 585, 611 P.2d 751 (1980). The cases cited by appellant, however, deal with the disregard of the corporate entity for the purpose of *imposing personal liability* upon the shareholders. Application of the alter ego doctrine to attribute to a corporation the acts of its officers and directors does not, contrary to appellant's assertion, result in disregard of the corporate entity. When

the doctrine is applied to impute to the corporation the act of the individual, it is merely an acknowledgment that an individual who dominates and controls a corporation by necessity acts with the implied knowledge, consent and ratification of that corporation.[2] Such was the rationale underlying the court's holding in *Roberts v. Hilton Land Co., supra.* We invoke the same doctrine in this case.

In further support of our holding, we note that the application of the alter ego doctrine for purposes of imputing to a corporation the acts of its officers and directors so as to exclude the corporation's coverage for the acts of such persons, has been recognized in other jurisdictions. *St. Paul Ins. Cos. v. Talladega Nursing Home, Inc.,* 606 F.2d 631 (5th Cir. 1979) (corporation denied coverage for intentional wrong of its general manager and controlling owner); *Aetna Cas. & Sur. Co. v. Shuler,* 72 A.D.2d 591, 421 N.Y.S.2d 87 (1979) (corporation denied coverage for intentional shooting by one of its employees who was also an officer, director and shareholder of the corporation). The rationale underlying all of these cases is that the actions of one who is found to be the alter ego of a corporation are tantamount to an act of the corporation; therefore, if the conduct of one who is the alter ego of a corporation constitutes an intentional wrong, it is also an intentional wrong of the corporation.

Boose cites two cases from other jurisdictions in support of her position. These cases are distinguishable in that none

---

[2]This analysis is likewise supported by the case law which imputes to a corporation the knowledge of its directors and officers. *See Plywood Mktg. Assocs. v. Astoria Plywood Corp.,* 16 Wn. App. 566, 558 P.2d 283, 96 A.L.R.3d 1231 (1976), *review denied,* 88 Wn.2d 1014 (1977) holding that where an agent is the sole representative or executive officer of a corporation, the knowledge of the agent is imputed to such corporation even though the agent has acted deceptively and adversely to the interests of the corporation. Accordingly, in addition to the alter ego doctrine, which we conclude contributed to the act, and hence the intent to injure to the corporation; we also conclude that the principle of implied knowledge, noted above, would similarly cause Blakeslee's knowledge regarding his sexual misconduct to be imputed to the corporation thus establishing that the corporation "expected" as well as intended the injuries that occurred as a result of Blakeslee's misconduct.

of the individuals in the cited cases was the sole or controlling owner of the corporation in question. *E.g., Glens Falls Indem. Co. v. Atlantic Bldg. Corp.,* 199 F.2d 60 (4th Cir. 1952) (corporation permitted coverage for intentional wrong of its president who owned only one–third of the stock and was a member of the corporation's board of directors).

In our judgment, the court correctly determined as a matter of law that the professional services corporation was excluded from coverage under the provisions of the general liability policy. To hold otherwise would be to ignore the reality that Blakeslee and the corporation are one and the same.

## II
### COVERAGE UNDER THE PROFESSIONAL LIABILITY POLICY

The professional liability portion of the policy provided coverage for damages "arising out of the rendering or failure to render . . ., professional services by the individual insured." The trial court concluded, as a matter of law, that the acts committed by Blakeslee were not related to the rendering of dental care, and therefore, were not within the coverage of the professional liability provisions of the policy as they applied to both Blakeslee individually and to the corporation. Boose assigns error to this conclusion, arguing that because the assault was committed during Blakeslee's treatment of her and with the aid of nitrous oxide, it did arise out of the rendering of professional services by Blakeslee, and is therefore within the policy's coverage.

### A
#### George Blakeslee, Jr., Individually

*Washington Ins. Guar. Ass'n v. Hicks,* 49 Wn. App. 623, 744 P.2d 625 (1987) is dispositive of this issue. In *Hicks,* the court was faced with the issue of whether a chiropractor was covered for acts of sexual misconduct committed at a time when he was engaged to perform chiropractic services, under a policy which limited coverage to injury caused by a "medical incident." Medical incident was defined in the

policy as "any act or omission in the furnishing of professional medical or dental services". *Hicks,* 49 Wn. App. at 625. In affirming the trial court's denial of coverage to the chiropractor, the court in *Hicks* noted that courts generally hold that medical malpractice insurance policies do not cover the insured physician's sexual contact with patients. *Hicks,* 49 Wn. App. at 627.

The court in *Hicks* stated that in determining whether a particular act involves professional services, courts look to the act itself, rather than the title of the party performing the act or the place where the act occurred. *Hicks,* 49 Wn. App. at 627. When the physician's sexual contact with his patient is not necessitated by the particular course of medical treatment, then the malpractice insurance policy does not provide coverage for the damages sustained by the victim. *Washington Ins. Guar. Ass'n v. Hicks, supra.*

█ The only course of treatment recognized in *Hicks* as involving sexual contact with a patient is the so-called "transference phenomenon" which, apparently, has been engaged in by some mental health therapists or psychiatrists. *Hicks,* at 627. We know of no legitimate course of treatment that involves sexual contact between a practitioner of the healing arts and his or her patient, and we can conceive of none. Clearly, dentistry does not involve sexual contact between dentist and patient.

In contrast, Boose cites *St. Paul Fire & Marine Ins. Co. v. Asbury,* 149 Ariz. 565, 720 P.2d 540 (Ct. App. 1986), wherein the court held that a gynecologist's improper sexual contact with a patient during a routine gynecological examination was intertwined with and inseparable from the services provided by the physician, thereby bringing such contact within the coverage of the physician's professional liability insurance policy. *Asbury,* 720 P.2d at 542. Although we do not ascribe to the court's holding in *Asbury,* we note that it is distinguishable on its face as the court's holding therein turned on its conclusion that the physician's improper contact was "intertwined with and inseparable from" the services sought (a gynecological

examination). In this regard, the court in *Asbury* specifically distinguished the unique circumstances of gynecology from other medical practices wherein sexual contact is not related to treatment. *Asbury,* 720 P.2d at 542, citing *Hirst v. St. Paul Fire & Marine Ins. Co.,* 106 Idaho 792, 683 P.2d 440 (Ct. App. 1984) (coverage denied under a physician's professional liability insurance policy for a sexual assault committed upon a patient who sought treatment for a hand injury, court holding that such contact did not constitute "professional services" under provisions of malpractice policy). Similarly, the treatment sought by Boose, like that in *Hirst,* did not require Blakeslee to make contact with that part of the patient's body that figured in the assault. Accordingly, *Asbury* is inapplicable.

Boose further contends, however, that because Blakeslee used nitrous oxide to make her more susceptible and less resistant to his sexual assault, it brought the sexual contact within the course of the medical treatment involved. A similar argument was rejected in *Hirst v. St. Paul Fire & Marine Ins. Co., supra,* wherein the physician administered Valium and Librax to the patient in order to make the patient more susceptible to the physician's sexual contact. *Hirst,* 683 P.2d at 442. The insurance policy at issue in *Hirst* provided coverage for damages resulting from the "'providing or withholding of professional services.'" *Hirst,* 683 P.2d at 443. In upholding a denial of coverage, the court stated that there must be a causal relationship between the treatment (*i.e.,* professional services) and the harm alleged by the victim. *Hirst,* 683 P.2d at 444.

With regard to the administering of drugs, the court in *Hirst* held that the act which caused the harm was the sexual assault, not the administering of the drugs. *Hirst,* 683 P.2d at 444. Accordingly, although the sexual assault in *Hirst* was preceded by the administering of drugs, there was no causal relationship with regard to the harm alleged and the professional services, as there was no showing that the patient was damaged in any way by the administration of the drugs. *Hirst,* 683 P.2d at 444.

We concur in this reasoning and hold that Blakeslee's administration of nitrous oxide, although admittedly a professional service, cannot be said to be a proximate cause of the injuries alleged by Boose, nor, as previously noted, can Blakeslee's fondling of his patient's breast be said to have arisen out of the rendering or failure to render the professional services at issue in the present case. Accordingly, Blakeslee's acts are not covered under the professional liability portion of the policy as it applies to him individually.

## B
## Professional Services Corporation

Finally, Boose contends that the professional liability coverage of the corporation is governed by the terms of an endorsement to the policy which, she argues, added to the corporation's coverage. The terms of the endorsement provide that the corporation's coverage under the professional liability policy is to be limited to the corporation's liability for "malpractice, error, mistake of the individual named . . ." Boose contends that this endorsement provides greater coverage to the corporation than is available to Blakeslee, individually, because the endorsement does not limit the coverage to acts "arising out of" the rendering of professional services.

Even assuming that the language of the endorsement is capable of broadening the scope of the corporation's coverage under the professional liability policy, an issue we do not address, the acts complained of still would not be encompassed by the policy. The essence of Boose's contention is that malpractice encompasses "assaults" and because Blakeslee's conduct constituted an assault, such conduct is covered by the terms of the corporation's coverage. The only direct authority cited by plaintiff in support of this contention is *Physicians' & Dentists' Business Bur. v. Dray,* 8 Wn.2d 38, 111 P.2d 568 (1941). In *Dray,* however, the court merely addressed the issue of the applicable statute of limitations for a suit alleging an unauthorized operation. *Dray,* 8 Wn.2d at 40. The court noted that

although an unauthorized operation is, in contemplation of law, an assault and battery, it may also amount to malpractice for purposes of the applicable statute of limitations. Clearly, the court did not hold, as Boose appears to suggest, that all assaults committed by physicians upon patients constitute malpractice. Furthermore, as previously noted in *Hicks,* coverage for liability arising out of sexual contact is generally not intended by the parties under such a policy. *Hicks,* 49 Wn. App. at 627. Accordingly, a broadening of the corporation's coverage to include malpractice would not provide protection to the corporation for Blakeslee's acts.

Because we affirm the trial court on the basis that the policy does not provide coverage for the acts complained of, we need not address the public policy issues raised by the parties.

We affirm.

REED and PETRICH, JJ., concur.

Reconsideration denied May 24, 1989.

Review denied at 113 Wn.2d 1017 (1989).