ELIZABETH ANN RIVERA, Appellant, v. NEVADA MEDICAL LIABILITY INSURANCE COMPANY, Respondent.

No. 21183

June 27, 1991 814 P.2d 71

---

*Beckley, Singleton, DeLanoy, Jemison & List* and *Daniel F. Polsenberg,* Las Vegas, for Appellant.

*Miles, Pico & Mitchell* and *E. Breen Arntz,* Las Vegas, for Respondent.

## OPINION

By the Court, ROSE, J.:

Appellant Elizabeth Ann Rivera (Rivera) went to see her gynecologist on Saturday, January 2, 1988, because she noticed a dark discharge from her breast. Dr. Kimble McNair (McNair) performed a breast, vaginal, and rectal examination on Rivera. McNair informed her that the results of her examination were favorable, but that he was concerned that he may have injured her during the rectal examination and needed to examine her again. Then McNair pulled Rivera across the table with her face down and sodomized her.

After this incident, Rivera contacted Rape Crisis and filed a police report and a medical malpractice complaint before the Nevada Medical-Legal Screening Panel. Dr. McNair was subsequently convicted of sexual assault.

At the time of the incident, respondent Nevada Medical Liability Insurance Company (NMLIC) insured McNair for professional liability. The policy covered damages incurred by the insured "as a result of claims made against the insured because of injury arising out of the rendering or failure to render professional services by the insured performed in the practice of the insured's profession." The policy contained a list of twenty-three

exclusions, three of which are pertinent to this case. These three exclude coverage for criminal acts, intentional injuries, and sexual acts which arise out of the rendering of professional services. The exact wording of the exclusions are as follows:

II. EXCLUSIONS

This insurance does not apply:

. . . .

(k) to claims made against an insured which resulted from the performance of a criminal act or services rendered while under the influence of any intoxicants, narcotics or psychoactive drugs;

. . . .

(o) to claims made against an insured which result from the commission, authorization, or ratification of any act intended by the doer thereof or by the insured to inflict injury or damage;

. . . .

(r) to claims made against an insured which result from sexual intimacy, sexual molestation, sexual harassment, sexual exploitation, or sexual assault. . . . ·

Rivera filed a declaratory relief action asking the district court to find that NMLIC must provide coverage for this sexual assault. The court granted NMLIC's motion for summary judgment, holding that NMLIC's policy did not cover McNair's action. Rivera now appeals, asserting that she should recover under McNair's policy because (1) coverage is proper when the sexual act is so much a part of the rendering of professional services that it is considered malpractice; (2) the "arising out of" language in the policy is ambiguous and therefore must be construed generally, and in Rivera's favor; (3) McNair did not intend injury, making exclusion "o" inapplicable; and (4) the need to compensate the victim should make the criminal and sexual act exclusions ("k" and "r") void as a matter of public policy. We conclude that none of these contentions have merit and affirm the order of the district court.

## *BREADTH AND AMBIGUITY OF THE POLICY*

Rivera asserts that her injury is covered by the policy because it resulted from the rendering of professional services. The policy states that it covers acts that "arise out of the rendering of or failure to render professional services." Rivera asserts that the term "arising out of" is broader than the term "caused by." *Cf.* Carter v. Bergeron, 160 A.2d 348 (N.H. 1960) (arising out of only means that the use was connected with the injury); Manufac-

turers Cas. Ins. Co. v. Goodville Mut. Cas. Co., 170 A.2d 571, 573 (Pa. 1961) (arising out of means causally connected and not proximately caused by). Therefore, the terms of the policy require only a general causal connection between the injury and the services, and the ambiguous term "arising out of" must be construed against the insurer and cover McNair's act.

NMLIC denies that the sexual assault arose out of the rendering of professional services. However, NMLIC need not make this argument.[1] The policy specifically excluded coverage for sexual misconduct. Even though NMLIC's policy has broad language that otherwise might cover McNair's act, the exclusions preclude coverage in this case.

Rivera asserts that the exclusions only preclude coverage for injuries that stem from tortious conduct which is separate and distinct from the rendering or failure to render professional services. In fact, NMLIC would not need to exclude a separate and distinct act like a rape outside the office, because such an act would not fall within the purview of a professional liability policy. Therefore, when the policy excludes sexual assault, it specifically means sexual assault that arises out of professional services.

One court did find that a gynecologist's act of sexual misconduct was covered by his malpractice policy. St. Paul Fire & Marine Ins. Co. v. Asbury, 720 P.2d 540 (Ariz. 1986). However, in that case, the policy contained no exclusions for injuries that result from unprofessional acts. *Id.* at 541. Since this policy specifically excludes sexual misconduct in three separate clauses, the reasoning in *Asbury* does not apply in this case.

## APPLICABILITY OF THE INTENT TO INJURE EXCLUSION

Rivera contends that exclusion "o," the intent to injure clause, does not apply because McNair intended the rape, but not her injuries. Some courts have held that intent to injure must be

---

[1]Nevertheless, NMLIC's reasoning goes as follows: Generally, sexual misconduct of a psychiatrist amounts to professional malpractice, but the same act by a doctor does not. This is because of the natural emotional reaction of a patient toward an analyst. Washington Ins. Guar. Ass'n v. Hicks, 744 P.2d 625 (Wash.App. 1987) (physicians' policies do not cover sexual misconduct because they do not offer a course of treatment which transfers emotions to themselves like a therapist's treatment might). Other courts simply have concluded that sexual misconduct does not arise out of professional services. Smith v. St. Paul Fire & Marine Ins. Co., 353 N.W.2d 130 (Minn. 1984) (the policy covers injury from medical treatment, not injury from acts which satisfied the doctor's own prurient interest); Eberdt v. St. Paul Fire & Marine Ins. Co., 585 P.2d 711 (Ore. 1978) (carrier need not defend doctor because an intentional tort cannot be committed in a negligent manner).

proved even in a case of sexual misconduct. State Auto Mut. Ins. Co. v. McIntyre, 652 F.Supp. 1177 (N.D.Ala. 1987) (intentional injury exclusion does not apply to all injuries which are the natural and probable consequences of an act; instead, it applies when the insurer proves intent); Allstate Ins. Co. v. Troelstrup, 768 P.2d 731, 732 (Colo.App. 1988) (intentional injury exclusion did not apply to the sexual molestation of minors because the insured had no subjective intent to cause harm).

However, at least five jurisdictions have held to the contrary.[2] The courts in those states determined that intent to injure is inferred when an insured commits a sexual assault on a minor. Although Nevada has no case law on point, two federal cases have interpreted Nevada law to hold the same way. State Farm Fire & Cas. Co. v. Smith, 907 F.2d 900 (9th Cir. 1990) (Nevada law conclusively presumes that molesting a child is harmful in every case—NRS 201.230 (lewdness with a minor)); Allstate Ins. Co. v. Foster, 693 F.Supp. 886 (D.Nev. 1988) (lewdness with a minor is so nearly certain to produce injury that intent to injure is inferred).

At least one court inferred injury when an adult was the victim of a sexual assault. Altena v. United Fire and Cas. Co., 422 N.W.2d 485 (Iowa 1988) (an act of forcible intercourse with a 20 year old is of such a character that intent to cause injury can be inferred as a matter of law). We agree that for purposes of insurance coverage, forcible rape is an act which the assailant knows with substantial certainty will cause harm to a victim of any age. Therefore, exclusion "o" precludes Rivera's claim regardless of McNair's subjective intent.

## VALIDITY OF THE CRIMINAL AND SEXUAL ACT EXCLUSIONS

Professional liability policies exist for the protection of both the insured tortfeasor and the injured party. Rivera asserts that if coverage were allowed, NMLIC could sue McNair for indemnification. Therefore, nullifying the exclusions could compensate Rivera without punishing NMLIC. Insurance companies generally may exclude coverage for intentional acts as a means of limiting their liability and deterring wrongful conduct. However, Rivera reasons that permitting these exclusions makes bad public

[2]These jurisdictions and corresponding cases are: Roe v. State Farm Fire & Casualty Company, 376 S.E.2d 876 (Ga. 1989); Auto-Owners Ins. Co. v. Gardipey, 434 N.W.2d 220 (Mich.App. 1988); Farmers Ins. Co. of Wash. v. Edie, 763 P.2d 454 (Wash.App. 1988); Horace Mann Ins. Co. v. Leeber, 376 S.E.2d 581 (W.Va. 1988); K.A.G. By Carson v. Stanford, 434 N.W.2d 790 (Wis.App. 1988).

policy when the tortfeasor never contemplated that his or her intentional act was insured. She asserts that McNair probably did not purchase insurance to cover his own wrongful conduct and hence his act should remain covered. *See* New Amsterdam Casualty Co. v. Jones, 135 F.2d 191 (6th Cir. 1943) (victim of intentional shooting could recover from tortfeasor's policy because the shooting could not have been in contemplation of the insured when he purchased the insurance).

There are three problems with Rivera's rationale. First, how does one distinguish between an act that the tortfeasor would have committed anyway, and an act that the tortfeasor committed because he knew he was insured? We see no reason why an insured professional would be less likely to purchase insurance in contemplation of tortious conduct than anyone else who would buy coverage for that purpose.

Second, even though the basic idea behind insurance is to compensate the injured, an insurance policy is nothing more than a contract between the insured and the carrier. If the insured does not purchase a specific kind of insurance, the carrier has no obligation to pay, even if an injured person deserves to be compensated. Therefore, insurance companies may specifically exclude anything from their policy that state law does not forbid them from excluding.

Finally, insurance companies base their premiums on the items covered in the policies. The average law-abiding professional would not desire to pay more so that the policy would cover their own criminal or intentionally tortious conduct. *See* Washington Ins. Guar. Ass'n v. Hicks, 744 P.2d 625 (Wash.App. 1987) (purchasers of professional liability coverage contract do not expect coverage for sexual assault).

We conclude that these three explanations amply refute Rivera's contention that public policy considerations disfavor the enforcement of intentional, criminal, and sexual act exclusions in professional liability policies. Since NMLIC specifically excluded McNair's act from its policy, the company has no obligation to pay for Rivera's injuries. We therefore affirm the district court's order granting NMLIC's motion for summary judgment.

SPRINGER, STEFFEN and YOUNG, JJ., concur.

MOWBRAY, C. J., dissenting:

Respectfully, I dissent.

The central question presented by this case is whether this court should recognize a policy exclusion for an act of sexual molestation committed by a gynecologist. I suggest that such an exclusion is void as against public policy.

The majority concludes that an insurance policy is "nothing more than a contract between the insured and the carrier." Such a simplistic view ignores the reality that medical malpractice insurance is a means of providing compensation to injured parties. Indeed, many courts have recognized that liability policies exist for the benefit of the injured party as well as the insured. St. Paul Fire & Marine Ins. Co. v. Asbury, 720 P.2d 540, 542 (Ariz.App. 1986); St. Paul Fire & Marine Ins. Co. v. Mitchell, 296 S.E.2d 126, 128 (Ga.App. 1982); Vigilant Ins. Co. v. Kamby, 319 N.W.2d 382, 385 (Mich.Ct.App. 1982); Hartogs v. Employers Mut. Liab. Ins. Co. of Wisc., 391 N.Y.S.2d 962, 964 (Wis. 1977); L.L. v. Medical Protective Co., 362 N.W.2d 174, 179 (Wis.Ct.App. 1984).

The focus should be on the injured victim. A woman is vulnerable to her gynecologist. There could be no greater exploitation of a patient's inherent vulnerability than nonconsensual sexual assault. In such cases, when women are being subjected to traumatic, emotional and physical injury, an adequate system of compensation must be available.

Insurance is a means for compensating the victims of such malpractice injuries. Coverage is reasonable where the tortious act is also an act of malpractice. *See, e.g.,* Cotton v. Kambly, 300 N.W.2d 627, 629 (Mich.App. 1981) (potential criminal liability does not negate malpractice claim against psychiatrist for inducing patient into sexual relationship); *see also* St. Paul Fire & Marine Ins. Co. v. Asbury, 720 P.2d 540, 542 (Ariz.App. 1986) (public policy supports finding of insurance coverage where improper sexual manipulations occurred during gynecological examination).

For these reasons I would reverse the order of the district court.