[No. 53123-9-I.    Division One.    June 13, 2005.]

ROBERT C. WOO ET AL., *Respondents*, v. FIREMAN'S FUND
INSURANCE COMPANY ET AL., *Appellants.*

*Michael B. King, Michael H. Runyan,* and *Emilia L. Sweeney* (of *Lane Powell, P.C.*), for appellants.

*Charles K. Wiggins* and *Cheryl A. Dickerhoof* (of *Wiggins & Masters, P.L.L.C.*); *Richard A. Bergh* (of *Law Office of Andrew Bergh*); and *Richard B. Kilpatrick,* for respondents.

¶1 KENNEDY, J. — While his patient, also an employee, was under anesthesia for a dental procedure, a dentist played a practical joke by putting false teeth shaped like boar tusks into her mouth and taking pictures. After his insurer declined to defend him, the dentist settled his employee's lawsuit and sued his insurance company for coverage, for expenses incurred in his defense, for damages for bad faith and violations of the Consumer Protection Act (chapter 19.86 RCW), and for attorney fees and costs. Following the trial court's summary judgment order concluding that the insurer breached its duty to defend, a jury returned a verdict for the dentist. The insurer appeals. Because the complaint unambiguously alleged damages resulting only from intentional acts not required by or consisting of a legitimate part of the properly rendered dental procedure, the insurance company had no duty to defend the claim, and the verdict must be vacated and the case dismissed.

## FACTS

¶2 This insurance dispute arises from a lawsuit filed by surgical assistant Tina Alberts against her former employer, oral surgeon Dr. Robert Woo. According to her complaint, during the five years of her employment, Dr. Woo learned of her interest in pot-bellied pigs and her pet pig, Walter. He began to make offensive comments to her about pigs and then showed her pictures of his boar hunting trip and a skinned pig hanging on a hook and made comments like, "There is how Walter will look." During the last six months of her employment, Alberts began to complain about Dr. Woo's treatment of staff and to demand overtime pay.

¶3 When Alberts chipped a baby tooth that had never been replaced by a permanent tooth, Dr. Woo agreed to remove the chipped tooth and another tooth for her. According to usual procedure, a co-worker took an impression of Alberts' teeth and temporary false teeth known as "flippers" were created for Alberts to wear until the teeth were replaced by permanent implants. But Dr. Woo ordered additional flippers designed in the shape of boar tusks. While Alberts was under general anesthesia, Alberts' oxygen mask was removed, the boar tusks were placed into her mouth and photographs were taken showing Alberts' eyes and mouth pried open and the tusks protruding from her mouth. The boar tusks were then removed and the procedure was completed. Other staff members later gave Alberts the boar tusks and the pictures. After their presentation, Alberts assisted Dr. Woo in a procedure, during which he mentioned the boar tusks and said that she had a trophy to take home. Alberts left the office that day and never returned.

¶4 Alberts' complaint listed the following causes of action: assault, outrage, battery, invasion of privacy, false light, public disclosure of private facts, nonpayment of overtime wages, retaliation, medical negligence, lack of informed consent, and negligent infliction of emotional distress. Her husband claimed outrage, loss of consortium, and negligent infliction of emotional distress, and her mother claimed outrage and negligent infliction of emotional distress.

¶5 At the time of the incident, Dr. Woo held insurance policies issued by Fireman's Fund[1] for dental professional liability, employment practices liability, and general liability. The dental professional liability portion of the policy

---

[1] Woo sued Fireman's Fund Insurance Company, National Surety Corporation, Depositors Insurance Company, and The Pacific Underwriters Corporation. Fireman's Fund agreed for the purposes of the suit to be responsible for the acts and omissions of National, its corporate affiliate. Depositors, Woo's homeowner's and personal excess liability insurer, defended him on a reservation of rights, obtained a partial summary judgment order and then assigned its rights to Woo. Pacific Underwriters, Woo's insurance broker, was voluntarily dismissed from the suit.

provided coverage for damages "that result from rendering or failing to render dental services." The policy defined "dental services" as "all services which are performed in the practice of the dentistry profession as defined in the business and professional codes of the state where you are licensed." Clerk's Papers at 162. Washington law provides:

A person practices dentistry, within the meaning of this chapter, who (1) represents himself as being able to diagnose, treat, remove stains and concretions from teeth, operate or prescribe for any disease, pain, injury, deficiency, deformity, or physical condition of the human teeth, alveolar process, gums, or jaw, or (2) offers or undertakes by any means or methods to diagnose, treat, remove stains or concretions from teeth, operate or prescribe for any disease, pain, injury, deficiency, deformity, or physical condition of the same, or take impressions of the teeth or jaw, or (3) owns, maintains or operates an office for the practice of dentistry, or (4) engages in any of the practices included in the curricula of recognized and approved dental schools or colleges, or (5) professes to the public by any method to furnish, supply, construct, reproduce, or repair any prosthetic denture, bridge, appliance, or other structure to be worn in the human mouth.

. . . .

The practice of dentistry includes the performance of any dental or oral and maxillofacial surgery. "Oral and maxillofacial surgery" means the specialty of dentistry that includes the diagnosis and surgical and adjunctive treatment of diseases, injuries, and defects of the hard and soft tissues of the oral and maxillofacial region.

RCW 18.32.020.

¶6 The employment practices liability portion of the policy provided coverage for "damages as a result of sexual harassment, discrimination, or wrongful discharge that arise out of a wrongful employment practice." Clerk's Papers at 154. The policy defined "wrongful discharge" as "the unfair or unjust termination of an employment relationship which: breaches an implied agreement to continue employment; or inflicts emotional distress upon the employee, defames the employee, invades the employee's privacy, or is

the result of fraud," and defined "wrongful employment practice" as "any negligent act, error, omission or breach of duty committed in the course of: relations with employees; interviewing, hiring or refusing to hire anyone who applies for employment; or decisions to hire, promote, discipline or fire employees." Clerk's Papers at 166.

¶7 The general liability portion of the policy provided coverage for claims of "bodily injury . . . caused by an occurrence" during the policy period and in the coverage territory, and "personal injury caused by an offense arising out of your business . . . ." Clerk's Papers at 74.

¶8 The policy included the following definitions:

1. Accident means a fortuitous circumstance, event or happening that takes place and is neither expected nor intended from the standpoint of the insured.

. . . .

4. Bodily injury means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

. . . .

12. Occurrence means . . . an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

13. Offense means a fortuitous, inadvertent or mistaken business activity giving rise to advertising injury or personal injury neither expected nor intended from the standpoint of the insured.

. . . .

17. Personal injury means injury, other than bodily injury, arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The actual wrongful eviction from, actual wrongful entry into, or actual invasion of the right of private occupancy of a room, dwelling or premises that a person legally occupies;

d. Oral or written publication of material that slanders or libels a person or organization; or

e. Oral or written publication of material that violates a person's right of privacy.

. . . .

27. Your business means the trade, profession or occupation in which you are engaged and which is shown on the declarations page.

Clerk's Papers at 85, 87-89.

¶9 Following Fireman's Fund's decision not to defend him, Dr. Woo settled with Alberts and then filed suit against his insurers seeking declaratory relief and damages, alleging a bad faith breach of the duty to defend and violations of the Consumer Protection Act. The trial court granted partial summary judgment to Dr. Woo, holding that Fireman's Fund breached its duty to defend under the coverage for professional liability, employment practices liability, and "business" or general liability. After a trial on Dr. Woo's claims of bad faith and violations of the Consumer Protection Act, a jury returned a verdict in favor of Dr. Woo, and the trial court entered judgment against Fireman's Fund including damages under the jury verdict, costs of the Alberts' settlement and Dr. Woo's defense, damages under the Consumer Protection Act, prejudgment interest, and attorney fees and costs.

## ANALYSIS

¶10 Fireman's Fund contends that the trial court erred in granting summary judgment to Woo regarding the duty to defend. This court reviews a summary judgment order de novo, performing the same inquiry as the trial court. *Kruse v. Hemp*, 121 Wn.2d 715, 853 P.2d 1373 (1993). The court must consider the facts submitted and all reasonable inferences from those facts in the light most favorable to the nonmoving party. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Kruse*, 121 Wn.2d at 722; CR 56(c).

■ ¶11 An insurer's duty to defend an action brought against a policyholder arises when a complaint is filed alleging facts and circumstances arguably covered by the policy. *Kirk v. Mt. Airy Ins. Co.*, 134 Wn.2d 558, 561, 951 P.2d 1124 (1998). Although the duty to defend is broad, an insurer has no duty to defend claims based on factual allegations that are clearly not covered by the policy. *Id.* (citing *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 486, 687 P.2d 1139 (1984)). "The duty to defend hinges not on the insured's potential liability to the claimant, but rather on whether the complaint contains any factual allegations rendering the insurer liable to the insured under the policy." *Emerson*, 102 Wn.2d at 486. "An insurance company is required to look beyond the allegations of the complaint if (a) the allegations are in conflict with facts known to or readily ascertainable by the insurer or (b) the allegations of the complaint are ambiguous or inadequate." *E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wn.2d 901, 908, 726 P.2d 439 (1986). If the allegations in the complaint are ambiguous or inadequate, the insurer must investigate the potential for liability. *Id.* But the insurer may not rely on facts extrinsic to the complaint in order to deny its duty to defend where the complaint can be interpreted as triggering the duty to defend. *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 751, 761, 58 P.3d 276 (2002).

¶12 Here, the complaint is not ambiguous or inadequate. Alberts accused Dr. Woo of devising a scheme to humiliate and denigrate her by obtaining a second pair of flippers shaped like boar tusks, putting them in her mouth, taking pictures of her with the tusks in her mouth while she was anesthetized, and later referring to the tusks and pictures as a "trophy to take home." Although the complaint lists several alternative causes of action, including medical negligence and negligent infliction of emotional distress, the facts and circumstances supporting her claims are limited to this series of events.

¶13 To determine whether the duty to defend exists, this court examines the policy's insuring provisions to see if the

complaint's allegations are conceivably covered. *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wn.2d 55, 64, 1 P.3d 1167 (2000). Policies are interpreted as they would be by the average purchaser. *Id.*

¶14 Regarding the dental professional liability coverage, Dr. Woo argued, and the trial court apparently agreed, that the placement of boar tusks in Alberts' mouth constituted either dental services or the failure to render dental services, such that the policy could conceivably cover his actions, triggering the duty to defend. But the actions at issue could not conceivably be considered a means or method "to diagnose, treat, remove stains and concretions from teeth, operate or prescribe for any disease, pain, injury, deficiency, deformity, or physical condition . . . ." RCW 18.32.020. No reasonable person could believe that a dentist would diagnose or treat a dental problem by placing boar tusks in the mouth while the patient was under anesthesia in order to take pictures with which to ridicule the patient. While Dr. Woo was clearly rendering dental services when he administered anesthesia, removed Alberts' teeth, and put in the proper flippers, we conclude as a matter of law that when he placed the boar tusks in her mouth and took pictures, he was not rendering professional services.

¶15 To analyze questions of professional liability insurance coverage in cases involving sexual misconduct during dental or medical procedures, "courts look to the act itself, rather than the title of the party performing the act or the place where the act occurred." *Standard Fire Ins. Co. v. Blakeslee*, 54 Wn. App. 1, 9, 771 P.2d 1172 (1989) (citing *Wash. Ins. Guar. Ass'n v. Hicks*, 49 Wn. App. 623, 627, 744 P.2d 625 (1987) (chiropractor's malpractice policy did not cover sexual incident with patient during treatment session)). In *Blakeslee*, the trial court properly held that the insured had no duty to defend or indemnify the insured dentist and his corporation in a suit alleging that the dentist lifted his patient's shirt and fondled her breast while she was anesthetized so that he could fill cavities in

her teeth. 54 Wn. App. at 2-3. The court stated, "We know of no legitimate course of treatment that involves sexual contact between a practitioner of the healing arts and his or her patient, and we can conceive of none. Clearly, dentistry does not involve sexual contact between dentist and patient." *Id.* at 9.

¶16 Because the professional services that Blakeslee actually rendered could not "be said to be a proximate cause of the injuries alleged" by the patient, and because fondling his patient's breast could not "be said to have arisen out of the rendering or failure to render the professional services at issue," his acts were not covered under the professional liability portion of the policy. *Id.* at 11.

¶17 Dr. Woo attempts to distinguish *Blakeslee* by pointing out that "one can fondle a breast without having anything to do with dentistry, but one cannot take molds, fabricate and insert flippers into another person's mouth without practicing dentistry." Resp't's Br. at 36. But, like Blakeslee, Dr. Woo took advantage of his patient's anesthetized state to take actions for his own purposes rather than for her treatment. As in *Blakeslee*, Alberts' complaint does not allege that she was injured by the professional services that Dr. Woo actually rendered—that is, the administration of the anesthesia, the removal of the baby teeth, or the placement of the proper flippers. Neither does she contend that she was injured because he failed to perform some professional service that she was expecting. Instead, she alleges injuries arising from his actions in taking advantage of her anesthetized state to place boar tusks in her mouth solely for the purpose of taking humiliating pictures. Given the fact that no conceivably legitimate course of dental treatment includes boar tusks, and the fact that the complaint does not allege any damages proximately caused by actual dental services rendered or a failure to render dental services, the holding in *Blakeslee* supports the conclusion that Fireman's Fund had no duty to defend Dr. Woo under the professional liability portion of the policy.

¶18 Dr. Woo also contends that the professional liability portion of the policy is "at least ambiguous" because Fireman's Fund denied coverage under that portion of the policy because the allegation of the complaint did not arise out of the provision of "dental services" and then denied general liability on the ground that Alberts' claimed injury "arises from . . . rendering a professional dental service." But nothing in the general liability section of the policy renders the professional liability portion of the policy ambiguous. Neither the language of the professional liability portion of the policy nor the complaint is ambiguous here, and given the unambiguous allegations of the complaint, the trial court erred in holding that Fireman's Fund had a duty to defend under the professional liability portion of the policy.

¶19 Fireman's Fund also contends that the trial court erred in its holding that it had a duty to defend under the employment practices portion of the policy. Based on the clear language of the policy, the parties agree that the only portion of the policy potentially at issue here is damages for a "wrongful discharge" arising out of a "wrongful employment practice." Clerk's Papers at 154. Dr. Woo contended below and argues on appeal that Alberts' complaint includes a claim for constructive discharge conceivably covered by this portion of the policy. Although Alberts' complaint alleges that Alberts left the office and never returned, the claimed cause of the injuries was the practical joke. It does not allege any facts which would conceivably constitute the tort of wrongful discharge recognized in our statutes or case law. There is no wrongful termination tort based on boorish behavior by one's employer, unless such behavior violates an employment contract, discrimination statutes, the constitution, or public policy. Dr. Woo focuses his argument on the language of his insurance policy, but Alberts was not a party to that contract. The first step in analyzing whether a duty to defend existed is to determine whether a cognizable cause of action has been pleaded. None was, so Fireman's Fund had no duty to defend under the employment liability portion of the policy.

¶20 As to the general liability coverage, Fireman's Fund contends that the trial court erred in holding that it had a duty to defend because any bodily injury alleged in Alberts' complaint was not the result of an "occurrence," defined by the policy as an accident, in that the complaint alleged only intentional conduct. Dr. Woo argues that because the complaint does not allege that he intended to give Alberts the photos, and an investigation would have revealed that he did not intend to give them to her, the presentation of the photos could conceivably be considered an accident, triggering the duty to defend. But the complaint unambiguously alleges only intentional conduct by Dr. Woo leading to Alberts' injuries: "devis[ing] a scheme to humiliate and denigrate Ms. Alberts," ordering boar tusks, placing them in Alberts' mouth, taking pictures, having the pictures developed, and telling Alberts that she had a trophy to take home. Even broadly construed, these allegations cannot be read to describe an "accident," defined by the policy as "a fortuitous circumstance, event or happening that takes place and is neither expected nor intended from the standpoint of the insured." Clerk's Papers at 85. And given the facts and circumstances here, Dr. Woo's later claim that when he reviewed the pictures he decided they were not funny and did not intend to have his staff give them to Alberts does not change the unambiguous allegations of solely intentional conduct by Dr. Woo in the complaint.

¶21 The general liability portion of the policy also provides coverage for "personal injury caused by an offense arising out of your business." Fireman's Fund contends that it had no duty to defend under this portion of the policy because the facts and circumstances of the complaint clearly allege that the injuries were not caused by an offense arising out of Dr. Woo's business but by a practical joke that had no business purpose. Dr. Woo argues that because the incidents at issue involve "employee relations," the offense here arose from the business of running a dental practice.

¶22 The parties both discuss *Jackson v. Frisard*, 685 So. 2d 622, 629 (La. Ct. App. 1996), in which the court considered coverage under a homeowner's policy containing a business pursuits exclusion that did not apply "to activities which are ordinarily incident to non-business pursuits"— such that it provided coverage for injuries resulting from accidents that did not arise out of business pursuits. During a training session of state troopers, an incident of "horseplay" led to an injury. Because the court construed "the policy language in question to provide coverage for acts which by their nature are not associated with the insured's business pursuits, but which are only casually related to the business activities," the question was not "whether the insured was engaged in a business pursuit at the time of the accident, but rather whether the particular activity engaged in at the time of the accident was nevertheless one ordinarily incident to nonbusiness pursuits." *Id.* at 631. Because the testimony was undisputed that the training session did not involve the kind of "striking on the back" that led to the injury, the court found that the action of striking on the back was not an activity associated with the business of the training session but only casually related to the business and ordinarily incident to nonbusiness pursuit, and held that the policy did not exclude coverage for the incident. *Id.*

¶23 Here, the general liability portion of the policy provides coverage for personal injury arising from the business. Although *Jackson v. Frisard* involved a policy excluding injuries arising from the business, as Fireman's Fund points out, its analysis is useful. This policy may be interpreted to call for an inquiry into whether the particular activities engaged in at the time of the injury were ordinarily incident to business pursuits. But upon such inquiry, we conclude that the activities involved here— ordering boar tusks, placing them in a patient's mouth, taking pictures, and telling the patient that the tusks and pictures were "a trophy to take home"—are not incident to providing the professional dental services of administering

anesthesia, removing teeth, and fitting temporary false teeth. Thus, any "personal injury" alleged in the Alberts' complaint did not arise from Dr. Woo's business. Accordingly, Fireman's Fund did not have a duty to defend him under that section of the policy.

## CONCLUSION

¶24 Because the facts alleged in Alberts' unambiguous complaint, if proved, would not impose liability upon Fireman's Fund within the policy coverage for professional liability, employment practices liability, or general liability, Fireman's Fund had no duty to defend Dr. Woo. The trial court's summary judgment order regarding duty to defend is reversed, the judgment vacated, and the case dismissed. *See, e.g., E-Z Loader Boat Trailers,* 106 Wn.2d at 905, 911 (where insurer had no duty to defend, trial court properly granted summary judgment dismissal of employer's claims for costs of defense, for coverage, and for damages for bad faith).

¶25 Reversed and dismissed.

GROSSE and BAKER, JJ., concur.

Reconsideration denied August 9, 2005.

Review granted at 156 Wn.2d 1035 (2006).