Harold Baer, J.
The plaintiff Hartogs was a practicing psychiatrist. The defendant is alleged to have been his medical malpractice insurer during the period (March, 1969 to March, 1971) in suit. In March, 1971 a former female patient sued Hartogs.
The complaint in that action alleged five separate causes of action. Four sought damages for violation of specific penal statutes. These were withdrawn at the trial. The fifth for malpractice was tried and at the trial it was established that Hartogs, under the guise of medical therapy to cure his patient’s lesbianism, during a period of 13 months prescribed and personally administered multiple, repetitive doses of fornicatus Hartogus. Judgment for over $150,000 was entered for the plaintiff against Hartogs who, since this defendant disclaimed coverage, was defended by his own attorney. While the appeal was pending, the defendant insurer, despite its disclaimer to Hartogs, settled with the patient and satisfied a reduced judgment.
In this action Hartogs seeks to recover his costs and expenses in defending the action in which he was adjudicated as having indulged his concupiscentia medicus. Since the defendant disclaimed, it refused to bond the judgment pending appeal. Hartogs alleges he filed for bankruptcy "to protect his property”. He seeks legal fees for the bankruptcy proceeding and damages for the humiliation of having to file for the protection of the bankruptcy court. He also seeks substantial punitive damages. Were he to prevail in his several causes of action, he would, in his own recognizably biased opinion, be entitled to recover more than 40 times what was paid to his patient, the object of his unique "medical advances”.
The plaintiff moves for summary judgment on his first cause of action to recover damages for the refusal to defend. He seeks also to strike the affirmative defenses of failure to state a cause of action and a one-year Statute of Limitations. The defendant cross-moves for summary judgment dismissing the complaint for failure to state causes of action. It also requests leave to serve an amended answer pleading two additional defenses developed from the material submitted by the plaintiff in his moving papers. The first is that the policy was void from its inception because of the plaintiff’s fraud in concealing material facts at the time of application for insurance. The *470 second, that the plaintiff violated his obligations under the policy by failure to comply with the notice requirements of the policy.
The defendant’s first notice of the claim against Hartogs was its receipt of the summons and complaint from him in March of 1971. The patient’s action against him has established, and he is estopped from denying, that she was his patient from approximately February, 1969 to September, 1970; that the fornicatus Hartogus was personally administered; that it was administered repeatedly during the last 13 months of the relationship. By his testimony at the trial and in his affidavit on this motion the plaintiff admitted that he at all times knew that the therapy he was administering was a violation of professional ethics and not within acceptable medical standards. It is thus indisputable that in September, 1970 when the last treatment was administered and the doctor-patient relationship ended, Hartogs became "aware of an event which he [had] reason to believe [might] lead to a claim against him under [the] policy”. With his admitted knowledge that the administered "prescription” violated medical ethics and was not within the accepted medical standards he was aware that an event occurred which might lead to a claim. Under the policy he was obligated to notify as soon as practicable. Instead no notice was received until 18 months after commencement of the unusual "therapy” and six months after its last application.
Although this case is resolvable on the narrow issue of lack of due notice, an even more important issue is presented which dicates the same result. Defendant claims that the "treatment” which Hartogs administered did not constitute medical malpractice and was therefore not covered under the policy. Hartogs argues that the jury in the case against him has already found medical malpractice. They are both correct. A distinction should be drawn in a factual situation such as this between medical malpractice in the mind of the patient and medical malpractice in the mind of the doctor. Plainly when the patient submitted she believed that appropriate medical therapy was being administered. Only some time thereafter did she discover that she had been duped, the victim of fraud and subterfuge. On the other hand, the doctor administering the "treatment” at all times knew, and has so stated in the previous trial and on this motion, that what he *471 was doing was in no way pursuant to the doctor-patient relationship. The obvious purpose was to permit him to accomplish his personal satisfaction.
The distinction to be drawn between the injured party and the insured is clear. No longer is it the law in this State "that the liability policy existed solely for the protection of the insured” (Lauritano v American Fire Ins. Co., 3 AD2d 564, 568, affd 4 NY2d 1028). The courts recognize that the injured person also is to be protected.
While the court knows of no precedent directly on point (fortunately the factual situation precludes precedent) it is satisfied that the analogy in the line of cases which approves the validity of a disclaimer against an insured while voiding it as to the injured party, is sufficient to support this conclusion. Under section 167 of the Insurance Law, an injured party has been granted a cause of action against an insurer. Cases such as Lauritano v American Fire Ins. Co. (supra) have held that while the lateness of the notice given by the insured may support the carrier’s disclaimer against the insured, in an action by the injured party the criteria is different and the injured party may sustain his action even if the insured could not. The plaintiff knew that his actions were for his personal satisfaction and did not constitute medical practice. Therefore as between the plaintiff and his insurer those actions could not constitute malpractice and were never intended to be included within the protective coverage of the malpractice policy.
There is a further reason to grant summary judgment to the defendant. There are several situations in which courts as a matter of public policy refuse to allow themselves to be used to enforce illicit or immoral or unconscionable purposes. To cite two examples of the policy — they will not entertain suit to collect a gambling debt; they will disallow a recovery which will effect a forfeiture. The court, as public policy, holds here that it will not afford this plaintiff resort to the processes of the court. To hold otherwise would be to indemnify immorality and to pay the expenses of prurience.
Accordingly, the plaintiff’s motion for summary judgment is denied; the defendant’s cross motion for that relief is granted.