■    PUBLIC SERVICE MUTUAL INSURANCE COMPANY, Respondent, v SAUL GOLDFARB, Appellant, et al., Defendant.—Judgment and order (one paper), Supreme Court, New York County, entered September 13, 1979, reversed, on the law, and judgment directed for defendant-appellant, declaring it to be the obligation of plaintiff-respondent insurance company to defend or indemnify defendant-appellant in respect of the claim of defendant Schwartz, plaintiff in a suit against defendant-appellant in Ulster County, with costs.

Special Term citing *Hartogs v Employers Mut. Liab. Ins. Co.* (89 Misc 2d 468), held to the opposite effect. In *Hartogs,* coverage was not as broad as here, which is inclusive of assault and "undue familiarity", as well as of punitive damages. Further, as to lack of notice, the plaintiff in *Hartogs* apparently deliberately withheld notice from his carrier though he knew his conduct was less than professional at all times. Here, although subject to professional discipline and a criminal proceeding, defendant-appellant dentist was not alerted to the possibility of civil suit until served with process, immediately forwarded to plaintiff insurance carrier, nor did he have reason to anticipate it. (Cf. *Public Serv. Mut. Ins. Co. v Levy,* 57 AD2d 794.) Plaintiff-respondent insurance company accepted the premium and drew the policy describing the event which would trigger the requirement of notice as "unusual occurrence". The policy covered civil suit only, not the other disagreeable results of appellant's difficulties with his patient, and defendant-appellant cannot be faulted for waiting for an "unusual occurrence" directly connected with what the insurance covered. And *Hartford Acc. & Ind. Co. v Village of Hempstead* (48 NY2d 218), which speaks broadly of public policy considerations, dealt with a contract of insurance which, unlike what is before us, did not contain a specific obligation to defend against a claim of unlawful activity. Added to which we observe that, though the civil charges against defendant-appellant dentist have overtones of activity violative of criminal statutes, that factor does not relieve the carrier of a specifically stated obligation to defend. (See *Miller v Continental Ins. Co.,* 40 NY2d 675, 679.) As indicated above, it was plaintiff-respondent who drew the policy and marketed it as coverage of specifically stated risks, and it should not be permitted to escape from its bargain. Concur—Sullivan, Ross and Markewich, JJ.

Sandler, J. P., and Carro, J., dissent in a memorandum by Sandler, J. P., as follows: We agree that the underlying action against appellant is covered by respondent's insurance policy and that appellant's omission to inform respondent of the commencement of disciplinary and criminal proceedings against him did not violate the "unusual occurrence" provision of the policy. If respondent wished to be notified under such circumstances more precise language to that effect should have been used in its form policy. The remaining issue as to whether the insurance policy's coverage of punitive damages is contrary to public policy comes before us in a somewhat unusual procedural context. The issue was not raised in the pleadings or in any of the proceedings at Trial Term, and it was not addressed in the decision that is the subject of this appeal. It was presented for the first time on appeal by appellant apparently because of a concern that the decision of the New York State Court of Appeals in *Hartford Acc. & Ind. Co. v Village of Hempstead* (48 NY2d 218), decided shortly after the Trial Term decision appealed from, might be determined to proscribe the punitive damages provision of the policy as contrary to public policy. Arguing that *Hartford* is not applicable here, appellant urges that if the court determines otherwise, respondent should be directed to pay for independent counsel, to be chosen by appellant, in defense of the underlying action. Respondent, in turn, now argues that *Hartford* is controlling and the punitive damages provision of the policy is accordingly unenforceable. We believe that *Hartford* in fact is dispositive of this issue. The Court of Appeals held quite specifically that public policy proscribes insurance coverage of punitive damages. Indeed, the principal concern of the court in *Hartford* was whether this public policy was applicable to punitive damages that might be recovered in a Federal court action under the Civil Rights Act against police officers in light of

particular characteristics of such an action and the legislative policy implicit in sections 50-j and 52 of the General Municipal Law. The Court of Appeals squarely held that the general rule "as to nongovernmental insureds" (p 229) proscribing enforcement of punitive damages coverage, applied to this Federal action against police officers even though they were entitled to indemnification by the municipality. That the insurance policy in question in *Hartford* did not explicitly refer to punitive damages is of no legal significance. The opinion assumed that the insurance policy in fact provided for such coverage. It would be a strange doctrine indeed that would find public policy to proscribe such coverage except where the coverage is set forth explicitly. As to the unfairness in permitting the respondent to avoid such coverage embodied in its own insurance policy, on the basis of which premiums were undoubtedly calculated, the Court of Appeals could not have been more precise (p 228): "As to the premium loading suggestion, it is simply irrelevant since if public policy proscribes coverage it does so whether an additional premium is paid or not." Indisputably, the totality of the circumstances here make this a "hard case". If we are right in the conclusion here reached, there should be immediate action by the responsible administrative agency to require respondent to disgorge promptly moneys that it has received that may be attributable to coverage contrary to public policy and which on this appeal it has disclaimed. We further agree with appellant that under this view of the provision, appellant is entitled to select its own counsel, to be paid for by respondent, in defense of the underlying action.