**Patricia Barrett SNYDER, Plaintiff,**

v.

**Byron MAJOR, M.D. and Byron Major, P.C., Defendants.**

**Patricia Barrett SNYDER, Plaintiff,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY, Defendant.**

Nos. 85 Civ. 9812 (KMW), 87 Civ. 8559 (KMW).

United States District Court, S.D. New York.

April 15, 1992.

Jonathan Herzog, Thomas A. Andrews, P.C., New York City, for plaintiff.

Joseph M. Stavola, Bower & Gardner, New York City, for Byron Major.

David Sculnick, Gordon & Silber, P.C., New York City, for Nat. Union Fire Ins. Co.

## MEMORANDUM OPINION AND ORDER

KIMBA M. WOOD, District Judge.

Plaintiff moves for a declaratory judgment that Defendant National Union Fire Insurance Company ("National Union") is liable to Plaintiff for any judgment she obtains against Defendants Byron Major and Byron Major, P.C., for damages pertaining to certain events on December 10, 1985. Defendant National Union cross-moves for a declaratory judgment that it is not liable for any judgment obtained pertaining to those events. For the reasons stated below, defendant's motion is granted.

## BACKGROUND

On December 10, 1985, Patricia Barrett Snyder visited the Manhattan medical office of her plastic surgeon, Dr. Byron Major. The appointment was occasioned by certain problems Snyder was having with her breast implants. Dr. Major had performed the breast implant surgery in 1981.

After examining Ms. Snyder, Dr. Major administered valium and ketamine to her, and these drugs sedated her. This was done, Dr. Major claims, as a prelude to performing a painful capsulotomy procedure (involving manual manipulation of the breast area surrounding the implants) to reduce the hardness in her breasts. At some point subsequent to this, and while Ms. Snyder was still at least partially sedated, Dr. Major and Ms. Snyder had sexual intercourse. At present, there are disputes among the parties as to whether Ms. Snyder made sexual advances to Dr. Major, whether she consented to the intercourse, and whether Dr. Major believed she consented to the intercourse.

This event led to proceedings against Dr. Major in (at least) three fora: criminal proceedings in the Supreme Court of the State of New York; disciplinary proceedings before a Hearing Committee of the New York State Board for Professional Medical Misconduct; and this diversity-based tort suit. In the Supreme Court of the State of New York, a jury found Dr. Major guilty of sexual abuse in the first degree; the conviction was later reversed and remanded for a new trial, on the basis of an evidentiary error by the trial court. *People v. Byron Major*, 154 A.D.2d 225, 545 N.Y.S.2d 923 (App.Div., 1st Dept.1989) (reversible error to admit testimony of expert on question of whether alleged rape victim consented, where testimony offered for sole purpose of bolstering alleged victim's testimony). The district attorney declined to retry Dr. Major.

The New York State Board of Regents, on August 24, 1988, issued an Order revoking Dr. Major's medical license, and found him guilty of a number of charges of professional misconduct, predicated on this in-

**648**

cident and unrelated incidents. *See In the Matter of Byron J. Major, Jr., Petitioner v. Board of Regents of the University of the State of New York,* 160 A.D.2d 1041, 553 N.Y.S.2d 879 (App.Div., 3d Dept., 1990) (upholding Board of Regents' revocation).

Ms. Snyder filed a complaint against Major in 1985 alleging medical malpractice, assault and battery, negligence, rape, sexual abuse, reckless endangerment, wrongful drug injection, failure to obtain informed consent, and intentional infliction of emotional distress. In 1987, she filed a separate complaint against National Union, Byron's insurer during the relevant period. In 1988, Judge Leisure of this Court granted summary judgment for plaintiff on her claim that National Union was obligated to defend Major, but denied plaintiff's motion for a declaratory judgment that National Union was liable for damages incurred by Major in Snyder's suit. *Snyder v. National Union Fire Ins. Co.,* 688 F.Supp. 932 (S.D.N.Y.1988). These cases were transferred to me in 1988. A verified amended complaint was filed in July of 1991. This complaint alleges medical malpractice, including negligence, gross negligence or recklessness, breach of fiduciary duty, failure to give informed consent, and reckless endangerment.

The motions presently before the Court concern the scope of the National Union policy that insured Dr. Major at the time of the event underlying this litigation. In particular, National Union contends that if there were a damage award against Major in this case, National Union's policy does not cover it, for two reasons: (i) the injury complained of in this case did not result from a "medical incident" within the meaning of the policy, and (ii) any liability in this case would arise from the performance of a criminal act, and is therefore excluded by Exclusion F of the policy. Snyder opposes National Union on both of these issues, and

further argues that National Union is procedurally precluded from denying liability.[1]

## DISCUSSION

Nation Union agreed to cover Major during the relevant period for "all sums which [Major] shall become legally obligated to pay as damages because of injury, including death, to which this insurance applies caused by a medical incident covered herein...." The policy's Definitions provide that a "medical incident" is any act or omission:

(1) in the furnishing of or failure to furnish health care services including but not limited to the furnishing of food, beverages, medications or appliances in connection with such services ...

Any such act or omission together with all related acts or omissions in the furnishing of such services to any such person shall be considered one medical incident;....

Snyder argues that she suffered emotional and physical damage as a result of the event that occurred on December 10, 1985, at Dr. Major's office. She claims that this event was a medical incident under the policy, and that, more generally, Dr. Major's treatment of her was medical malpractice. National Union takes the opposite position, contending that the emotional and psychological harm of which Snyder complains is essentially a result of Major's sexual misconduct, and not a result of his furnishing of health care services or his failure to furnish health care services. National Union argues that the event was not a medical incident under the policy.

New York law provides little authority on whether sexual misconduct by a physician constitutes a "medical incident" for purposes of imposing liability on an insurer for damages resulting from the physician's misconduct. In *Public Service Mutual Ins. Co. v. Goldfarb,* 53 N.Y.2d 392, 442

---

1. Snyder argues that (a) National Union is collaterally estopped from relitigating any factual issues litigated in the New York State disciplinary proceedings; (b) National Union's failure to file a new notice of disclaimer after the reversal of Major's conviction precludes denial of liability; (c) National Union is now time-

barred from disclaiming liability. The court rejects these arguments for the reasons stated in National Union's Memorandum of Law in Support of Nation Union's Motion for Declaratory Judgment, 24–25 (*re* collateral estoppel), 17–19 (*re* waiver and time bar).

N.Y.S.2d 422, 425 N.E.2d 810 (N.Y.1981), the New York Court of Appeals was faced with an insurance policy that explicitly covered "assault." The insurer in that case urged that, on public policy grounds, the Court should not enforce the contract where a dentist sought indemnification for liability resulting from a sexual assault on his patient. The Court found that the explicit term "assault" in this policy covered the sexual assault, and declined to void the contract. Because the term "assault" does not appear in the National Union's policy, and that was the sole basis for the *Goldfarb* decision.

An earlier case in the New York Supreme Court comes somewhat closer to the case at bar. *Hartogs v. Employers Mutual Liability Ins. Co. of Wisc.*, 89 Misc.2d 468, 391 N.Y.S.2d 962 (Sup.Ct., N.Y. City 1977). In *Hartogs*, the trial court interpreted a policy that did not explicitly include "assault." It held that where a psychiatrist had sex with his lesbian patient under the guise of "therapy," it was untenable to assume that the psychiatrist thought he was giving medical treatment. It therefore held that the policy did not apply, and the defendant could not therefore claim indemnification for losses sustained in defending the suit.

Numerous courts in other states have provided thoughtful opinions on this issue in recent years. The preponderance of cases involve psychiatrists who have had sex with their patients and are subsequently sued for malpractice. The majority rule is that the insurer is liable in those cases. *See, e.g., St. Paul Fire & Marine Ins. Co. v. Love*, 459 N.W.2d 698 (Minn.1990); *Zipkin v. Freeman*, 436 S.W.2d 753 (Mo.1968); *L.L. v. Medical Protective Co.*, 122 Wis.2d 455, 362 N.W.2d 174 (App.1984). The courts reason that where a psychiatrist has permitted his relationship with his patient to develop into a sexual relationship, he has mishandled the "transference" phenomenon that occurs in psychotherapy. Courts have found that the correct handling of the transference phenomenon is essential to good psychiatric care, and thus have held the psychiatrist's sexual conduct to be medical malpractice, or failure in the delivery of professional services. It is thus held to be covered. *Id.* at 700–702. A similar, transference-based theory leading to the imposition of liability on an insurer for a psychiatrist's misconduct was adopted by Judge Stanton of this District in *Vigilant Ins. Co. v. Employers Ins. of Wausau*, 626 F.Supp. 262 (S.D.N.Y.1986).

By contrast, courts have tended not to impose liability on insurers where the sexual conduct of non-psychiatrists is involved. The rationale is typically articulated simply as: having sex with a patient is not a part of the delivery of professional services, or part of medical treatment. *See, e.g., Smith v. St. Paul Fire & Marine Ins. Co.*, 353 N.W.2d 130 (Minn.1984) (physician's sexual abuse of three boys not within policy); *Hirst v. St. Paul Fire & Marine Ins. Co.*, 106 Idaho 792, 683 P.2d 440 (Ct.App.1984) (physician treating wrist injury, who drugged patient and performed sex on him, may not recover under liability policy); *Standard Fire Ins. Co. v. Blakeslee*, 54 Wash.App. 1, 771 P.2d 1172 (App.1989) (dentist's sexual misconduct not covered from policy).

Thus, the prevailing view is that sexual conduct is not a medical incident for insurance purposes unless the physician is a psychiatrist and the sexual incident arises out of a therapeutic relationship. We begin by remarking that none of the cases we have reviewed in this area articulates a satisfactory distinction for treating the sexual misconduct of a psychiatrist differently from that of any other sort of physician. Each wrongdoer has used the unusual degree of access (whether psychological or physical) to intimate space conferred by the rendering of medical treatment to assist the wrongdoer in overcoming the patient's natural resistance to incursions into one's intimate space. Once such conduct is recognized as part of the delivery of professional services, it can become difficult to draw a line separating one type of misconduct from another, for purposes of insurance coverage.

Thus, it is not surprising that a court would find no meaningful distinction be-

tween mishandling the transference phenomenon and mishandling a person's genitals. In *St. Paul Fire & Marine Ins. Co. v. Asbury, D.O.*, 149 Ariz. 565, 720 P.2d 540 (Ct.App.Div. 2 1986) an insurer was held liable for damages resulting from a negligence suit brought by patients against their gynecologist. Each patient alleged that Dr. Asbury manipulated her clitoris sexually while he was performing gynecological examinations of her. The *Asbury* Court found that the sexual misconduct was inseparable from the medical examination and therefore covered under the policy. *Id.* 720 P.2d at 542.

Plaintiff suggests that this Court use *Asbury* to frame a rule that sexual misconduct is a medical incident if (a) it arises out of psychiatric treatment or (b) it arises out of treatment of the erogenous zones. Pl.'s Reply Memorandum, at 7.[2] She then argues that because Major's sexual misconduct arose out of medical treatment of her breasts, that misconduct is a medical incident.

We reject the proposed rule for several reasons. First, we emphasize that the fundamental issue here is not whether the conduct in question is negligence, but whether a particular contract was intended to cover this conduct. The new rule suggested by plaintiff would be more appealing if raised in the context of the tort concept of malpractice, *i.e.*, expanding the set of wrongs from which tort victims should be protected. However where, as here, the aim is to uncover the intent of the parties in using certain terms, expanding the meaning of those terms may have a tendency to lead away from the correct answer. In light of the case law set out above (with the exception of *Asbury*), it is

likely that parties entering into medical insurance contracts are operating under the assumption that the sexual misconduct of psychiatrists is covered by malpractice insurance and the sexual misconduct of other insured physicians is not. It would decrease the likelihood of capturing the parties' intent to hold otherwise.[3]

Second, we are hesitant to adopt a rule with such amorphous boundaries. We think it unworkable for courts to be placed in the position of deciding what constitutes a "sexual incident arising out of treatment of erogenous zones." Because of the subjectivity of the term "erogenous zone," courts are poorly situated to second guess litigants' accounts of what is or is not an erogenous zone in a particular case. The proposed rule would invite such disputes.

Third, even considered on its own right, we are not convinced of the merit of the proposed rule. We are sceptical of the suggestion, implicit in plaintiff's proposal, that a physician's duty to refrain from sexually abusing his (or her) patients is any greater in cases where the physician is treating the erogenous zones. Perhaps the patient's fear of such abuse is greater in such cases—and undoubtedly it is appalling when such fears are realized, as in this case. However, we think it no less appalling and no less a violation's of a physician's duty when, as in *Hirst*, for example, a person being treated for a wrist injury was drugged and sexually abused. We thus see no reason to carve out the class of exceptions proposed by plaintiff.

Finally, plaintiff suggests that defendant is liable because failure to see that defendant suffers no harm as a result of the anaesthetic is covered by the policy. Plain-

**2.** Plaintiff's reference to *Wall v. Noble,* 705 S.W.2d 727 (Tex.App. 6 Dist.1986) is inapposite. *Wall v. Noble* concerns the contours of medical malpractice in a tort action between patient and physician, not in a dispute between patient and liability insurer.

**3.** Of course, this sort of view of contract construction, if taken to an extreme, could constitute an unduly static jurisprudence of contracts. In the case at bar, however, plaintiff has not presented any argument that reasons of policy or justice compel courts to expand the scope of malpractice insurance policies so that sexual incidents are covered in a broader class of cases. Indeed, although we do not find it necessary or appropriate to reach this question, we are inclined to think courts must be especially vigilant in guarding against the inclination to expand the liability insurer's cost and thereby raise the cost of health care to the consumer.

tiff cites no authority for this view,[4] and several prominent decisions decline to impose liability on the insurer where there was sexual abuse of a drugged patient. *See, e.g., Hirst, supra; Blakeslee, supra.* Where, as here, the harm complained of is a result of undisputedly *intentional* conduct by the physician, it would be anomolous to consider the injury as "caused by" his negligent failure to save her from harm under anaesthesia.[5]

Thus, we adhere to the majority view that sexual conduct is not a medical incident for insurance purposes unless the physician is a psychiatrist and the sexual incident arises out of a therapeutic relationship. Applying this rule to the case at bar, we find that the events alleged in Snyder's complaint do not constitute a medical incident. We thus find that National Union is not liable for damages found against Major.

## CONCLUSION

For the reasons stated above, the Court denies Snyder's motion for declaratory judgment and grants National Union's cross-motion for declaratory judgment that National Union is not liable for damages found against Major.

SO ORDERED.

---

**4.** The cases cited in plaintiff's Reply Memorandum at 4, paragraph 3, address only what constitutes malpractice as between medical provider and patient, and none addresses sexual conduct in the anaesthetized or post-anaesthetic phase.

**5.** The Court's analysis in this sentence is not intended to foreclose the possibility that Snyder might demonstrate proximate causation in her negligence and informed consent claims against Major. It is directed only toward interpretation of the phrase "caused by" in National Union's policy.