STEVEN G., a minor, by his Guardians, Robert and Nancy G., Plaintiffs,

v.

Ronald E. HERGET, D.D.S. and Ronald E. Herget, D.D.S., S.C., Defendants-Appellants,†

ST. PAUL FIRE & MARINE INSURANCE COMPANY, Defendant-Respondent.

Jeremy Thomas BARRETT, a minor, by Kitty K. Brennan, his Guardian ad Litem, Plaintiffs,

v.

Ronald E. HERGET, D.D.S., Defendant-Respondent,†

ST. PAUL FIRE & CASUALTY COMPANY, Defendant-Appellant.

Court of Appeals

*Nos. 91–2235, 91–2718. Submitted on briefs September 2, 1992.—Decided August 3, 1993.*

(Also reported in — N.W.2d —.)

†Petition to review pending.
†Petition to review pending.

676

For the defendant-appellant, St. Paul Fire & Marine Insurance Company, the cause was submitted on the briefs of *O'Neill, Schimmel, Quirk & Carroll, S.C.,* with *Douglas J. Carroll,* of counsel, of Milwaukee.

For the defendant-respondent the cause was submitted on the briefs of *Peterson, Johnson & Murray, S.C.,* with *Terry E. Johnson* and *Timothy J. Pike,* of counsel, of Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

SCHUDSON, J.   These consolidated appeals present an insurance coverage dispute between a dentist, Ronald E. Herget, and his professional liability

insurer, St. Paul Fire & Marine Insurance Company/St. Paul Fire & Casualty Company (St. Paul). Two issues are raised: (1) whether Herget's sexual assaults of two patients constituted "professional services" under his professional liability insurance policy so as to require coverage by St. Paul; and (2) whether, by virtue of settlement agreements the parties executed, Herget must reimburse St. Paul for the portion of the settlements it paid to the plaintiffs. We conclude that Herget's sexual assaults of his patients are not "damages resulting from . . . providing or withholding of professional services" covered by the St. Paul professional liability insurance policy. We also conclude that Herget must reimburse St. Paul for the portions of the settlements it paid to the patients he sexually assaulted.

## I. THE FACTS

Herget and St. Paul settled with the plaintiffs prior to trial in each case. The cases then proceeded between Herget and St. Paul on the coverage issue. The parties stipulated that the coverage issue should be determined based on the allegations in the complaints.

The amended complaint filed by Jeremy Barrett alleged:

> 1. That plaintiff, JEREMY THOMAS BARRETT, is a minor[1] . . . and that his date of birth is 11/10/70 . . . .
> 2. Defendant, Dr. Ronald E. Herget, is . . . a dentist licensed to practice in the State of Wisconsin and certified by the State of Wisconsin to practice dentistry . . . and is certified

---

[1] Jeremy Thomas Barrett reached the age of majority prior to the partial settlement of this matter at the trial court level.

and licensed as a pediodontist by the State of Wisconsin, a specialist in Children's dentistry.

3. Defendant, Dr. Ronald E. Herget advertises in the Milwaukee Yellow Pages and elsewhere and did so advertise at all times herein described that he was a specialist in dentistry for children.

4. Defendant, St. Paul Fire and Casualty Company, . . . was at all times herein described Dr. Herget's professional liability carrier.

5. That Jeremy Barrett's mother . . . contacted Dr. Herget to provide dental care to all her five children, including Jeremy Barrett, because of his advertisements as a specialist in dentistry for children.

6. On numerous occasions between Jeremy Barrett's thirteenth and fifteenth birthday, . . . the defendant, Dr. Herget, placed a gas mask over Jeremy Barrett's face, while Jeremy Barrett was in Dr. Herget's office for dental treatment and touched Jeremy Barrett's penis with Dr. Herget's hand, removed Jeremy Barrett's clothing, sat on top of Jeremy Barrett in the dental chair and rubbed his own penis against Jeremy Barrett's penis, placed his mouth on Jeremy Barrett's penis, placed Jeremy Barrett's penis into Dr. Herget's rectum.[2]

7. . . . All of the above described contact occurred in Dr. Herget's office . . . .

---

[2] St. Paul's brief states that Dr. Herget "put his penis into the plaintiff's rectum." This factual inconsistency between the amended complaint and the appellant's brief does not affect our analysis or holding regarding coverage.

8. That all of the above-described contact occurred while Dr. Herget was providing dental treatment or immediately after the dental treatment, while Jeremy Barrett was still in the dental chair in Dr. Herget's office.

The complaint filed by Steven G. alleged:

5. That on numerous occasions between June, 1982 and October, 1985, the defendants, Ronald E. Herget, D.D.S. and Ronald E. Herget, D.D.S., S.C., treated and provided dental services to the plaintiff, S.G.; that during such time, all of said professional services were rendered in the offices of the defendant, Ronald E. Herget, D.D.S., S.C., when the defendant, Ronald E. Herget, D.D.S., and plaintiff were alone in a treatment room and while plaintiff was in the dental chair.
6. That during the course of the provision of such professional services and dental care, the defendant, Ronald E. Herget, D.D.S., placed a gas mask over plaintiff's face and administered anesthesia to plaintiff; that after the anesthesia had taken effect and, at other times, the defendant, Ronald E. Herget, D.D.S., . . . touch[ed] and manipulat[ed] plaintiff's genitals as well as other parts of plaintiff's body and in other respects sexually assault[ed] plaintiff . . . .

St. Paul's "Dentists Professional Liability Protection" policy with Herget provided "protection against professional liability claims which might be brought against you in your professional practice as a dentist," covering "damages resulting from . . . providing or withholding of professional services . . . ."

In Barrett's case, St. Paul brought a motion for summary judgment, arguing that the conduct alleged in the plaintiff's complaint did not constitute "profes-

sional services" and, therefore, coverage was excluded under the policy. The trial court, Judge Rudolph T. Randa presiding,[3] determined that coverage did exist. St. Paul appeals.

In Steven G.'s case, the trial court, Judge Richard G. Harvey presiding, granted St. Paul's motion for summary declaratory judgment, concluding that coverage did not exist under Herget's professional liability policy. In this case, Herget appeals.

As part of the earlier settlement agreements with the plaintiffs, St. Paul and Herget agreed to preserve the coverage issue for appeal. Additionally, St. Paul and Herget agreed that the party that lost on the coverage issue following the trial courts' rulings would reimburse the prevailing party for his or its contribution to the settlements with the plaintiffs. On appeal, Herget challenges the enforceability of that provision of the settlement agreement in Barrett's case. Herget does not challenge on appeal the enforceability of the settlement agreement in Steven G.'s case, and therefore, he has waived the issue in that case.

## II.  ENFORCEABILITY OF THE SETTLEMENT AGREEMENTS FOR REIMBURSEMENT

At the outset, we must address the enforceability of the settlement agreement in Barrett's case in which St. Paul and Herget agreed to reimburse whichever party prevailed on the coverage issue. If the agreement is not legally enforceable, as Herget contends, we would not need to reach the coverage issue.[4]

---

[3] Barrett's case was subsequently transferred to Judge John E. McCormick.

[4] St. Paul contends that Herget is precluded from arguing about the enforceability of the settlement agreement, which the trial court ordered Herget to sign in written form following St.

We conclude that the settlement agreement is enforceable under sec. 807.05, Stats., having been "made in court" and "recorded by the reporter." At the settlement hearing, the parties confirmed the enforceability of their agreement:

> [Mr. Domnitz, counsel for the plaintiff]: [W]e have reached a settlement in this matter and in order to comply with the dictates of Sec. 807.05 of the Wisconsin Statutes, we are in Court with the official

Paul's motion to compel, because Herget did not timely cross-appeal from "the *order* enforcing the [written] settlement agreement." Execution of the written settlement agreement, pursuant to the trial court's order entered May 9, 1991, however, was merely the "mechanism" by which a final judgment could be entered by the trial court so that the appellate process could begin. For purposes of appellate court jurisdiction, the final judgment or order from which an appeal as a matter of right could have been taken was the *judgment* entered October 9, 1991. *See* sec. 808.03(1), Stats. (final judgment or order "disposes of the entire matter in litigation as to one or more of the parties"). We note, however, that while Herget's claim regarding the alleged unenforceability of the settlement agreement is a separate issue, here Herget is not seeking to *modify* the final judgment distinct from the modifications sought by St. Paul. *See* sec. 809.10(2)(b), Stats. (respondent must file cross-appeal if seeking to modify a judgment or order in appeal); *State v. Huff*, 123 Wis. 2d 397, 407–408, 367 N.W.2d 226, 231–232 (Ct. App. 1985). Instead, Herget is merely seeking to *affirm* the judgment by an alternative legal argument. *See Auric v. Continental Casualty Co.*, 111 Wis. 2d 507, 515–516, 331 N.W.2d 325, 329–330 (1983) (respondent may raise issue in brief without filing cross-appeal where respondent raises an error which, if corrected, sustains the judgment or order being attacked on appeal). Therefore, Herget is not precluded from challenging the enforceability of this aspect of the settlement agreement in his attempt to affirm the final judgment.

Court Reporter of this branch in order to place this matter on the record before the Court. It is my understanding — the Plaintiff has authorized me to agree to dismiss all pending actions . . . against Dr. Herget and St. Paul Fire & Marine in return for the agreement that the Defendants will pay the sum total of Three Hundred Twenty-five Thousand Dollars ($325,000) on or before April 15th of 1989. . . .

. . . .

[Mr. Hogan, counsel for St. Paul]: [T]his does not resolve the case in toto and that the issues as between Dr. Herget and St. Paul Fire & Marine still lie. And that all the mechanism by which this matter is to be preserved for appeal will be provided to the Court in the near future.

. . . .

[Mr. Domnitz]: The issues that we are very carefully trying to preserve relate to insurance coverage issues which have previously been addressed by the Court in the form of motions for summary judgment and as part of the package that we've been discussing it is expressly agreed by and between Dr. Herget and the insurance company that both parties will cooperate fully in doing whatever is necessary to preserve the right to appeal on that issue and that *there is an agreement between the parties that upon appeal the party losing the issue of coverage would reimburse the other their relative contribution which we won't make of record.* . . .

. . . .

[Mr. Erickson, counsel for Herget]: [R]egardless of what happens on appeal, if one party is to reimburse the other their relative contribution, that in and of itself does not have any affect whatsoever on any claims of bad faith there may be.

[Mr. Wood, also counsel for Herget]: Yeah. I guess the point was is that whoever may — if the

insurance company should prevail on appeal, counsel's statement that the losing party will pay the other party nonetheless preserves the Doctor's right to claim bad faith as an off-set to any such matter.

. . .

[Mr. Hogan]: That's my understanding of our agreement.

(Emphasis added.)

Section 807.05, Stats., states:

No agreement, stipulation, or consent between the parties or their attorneys, in respect to the proceedings in an action or special proceeding shall be binding unless made in court or during a proceeding conducted under s. 807.13 or 967.08 and entered in the minutes or recorded by the reporter, or made in writing and subscribed by the party to be bound thereby or the party's attorney.

Here, the agreement regarding reimbursement was placed on the record in accordance with section 807.05, Stats. Therefore, we conclude that the reimbursement agreement between the parties is enforceable.

## III.   THE COVERAGE ISSUE

Interpretation and application of an insurance policy provision to undisputed facts is a question of law we determine *de novo*. *See Schaefer v. General Casualty Co. of Wisconsin*, 175 Wis. 2d 80, 84, 498 N.W.2d 855, 856 (Ct. App. 1993). When construing or applying an insurance policy, the policy must be "interpreted from the standpoint of what a reasonable person in the position of the insured would have understood" the policy provision to mean. *See id.*

684

Herget contends that *L.L. v. Medical Protective Co.*, 122 Wis. 2d 455, 362 N.W.2d 174 (Ct. App. 1984), and the case upon which *L.L.* relied, *Zipkin v. Freeman*, 436 S.W.2d 753 (Mo. 1968), support his theory that coverage exists because the sexual assaults "flowed from" dental services he rendered. He argues that, under *L.L.*, "dentists certainly do have a reasonable expectation that the kind of conduct at issue here will be covered under their professional liability policies." We reject both his assessment of dentists' reasonable expectations and his interpretation of *L.L.*

In *L.L.*, a psychiatrist engaged in three acts of fellatio with his client during therapy sessions. *Id.* at 457–458, 362 N.W.2d at 175–176. The patient brought a malpractice action against the psychiatrist and the psychiatrist's professional liability insurer. *Id.* at 458, 362 N.W.2d at 176. The insurer moved for summary judgment, arguing that sexual acts between the psychiatrist and his patient were not professional medical services and therefore were not covered under the policy. *Id.* The trial court granted summary judgment in favor of the insurer, but this court reversed the trial court on the coverage issue.

Relying on *Zipkin*, which involved a similar claim by a patient against a psychiatrist, we held in *L.L.* that because a psychiatrist's performance of sexual acts with a patient and mishandling of the "transference phenomenon" constituted failure to give proper treatment, the sexual acts were within the professional liability policy clause that provided coverage for a "claim for damages . . . based on professional services rendered or which should have been rendered." *Id.* at 459–463, 362 N.W.2d at 176–178. This "transference," we explained, "is the emotional reaction which the patient in therapy has toward the therapist." *Id.* at

461, 362 N.W.2d at 177. It is a reaction that can leave the patient particularly vulnerable to the psychiatrist's control such that "a sexual relationship between therapist and patient cannot be viewed separately from the therapeutic relationship that has developed between them." *Id.* at 462, 362 N.W.2d at 178. Further, "by introducing sexual activity into the relationship, the therapist runs the risk of causing additional psychological damage to the patient." *Id.* Therefore, we concluded that the psychiatrist was acting "in the course of his professional services or professional responsibilities when he engaged in sexual activity with L.L." *Id.*

In support of his argument that *L.L.* should extend beyond the "transference phenomenon" to his sexual assaults because they also "flowed from" the professional services he rendered, Herget points to the following language in *L.L.*, which quoted *Zipkin*:

> Under the extremely broad terms of the policy before us, defendant agreed to pay damages "based on" - which would also mean resulting from, or caused by, or due to - professional services rendered or which should have been rendered. . . . *Defendant would limit the damages to the very act itself of professional services, but the policy clearly covered the results and liability flowing from professional services rendered or which should have been rendered.*

*L.L.*, 122 Wis. 2d at 459, 362 N.W.2d at 176 (emphasis added; quoting *Zipkin*, 436 S.W.2d at 761). Herget fails to point out, however, the remainder of the *Zipkin* language that *L.L.* quotes, which states:

> The gravamen of the petition is that defendant did not treat Mrs. Zipkin properly and as a result

> she was injured. He mishandled the transference phenomenon, which is a reaction the psychiatrists anticipate and which must be handled properly.

*Id.* Thus, it is clear that the linchpin for coverage in *L.L.* and *Zipkin* was the psychiatrist's failure to properly handle the "transference phenomenon."

Still, Herget argues that there also is a "transference" here "because of the trust which [Herget] developed as part of the doctor/patient relationship." Transference, however, as discussed by *L.L.* and *Zipkin*, involves more than the trust that could be reposed in any professional to whose procedures a patient submits or whose advice a client accepts. Rather, it involves the emotional fragility for which treatment may have been sought, and permits the exploitation of the vulnerability that may be present during the course of treatment. This nexus is what brings the tort within the ambit of professional malpractice that might be covered by a professional liability policy. In contrast, "[t]here is nothing inherent in the typical relationship between patient and dentist that makes the patient unusually susceptible to accept the sexual advances of the dentist." *Roe v. Federal Ins. Co.*, 587 N.E.2d 214, 218 (Mass. 1992). Therefore, the premise upon which liability was based in *L.L.* and *Zipkin* is absent in this case.

The overwhelming majority of decisions from jurisdictions that have addressed this issue on facts similar to those presented in this case hold that there is no professional liability coverage for dentists who sexually assault their patients. *See Roe*, 587 N.E.2d 214; *Niedzielski v. St. Paul Fire & Marine Ins. Co.*, 589 A.2d 130 (N.H. 1991); *The Standard Fire Ins. Co. v. Blakeslee*, 771 P.2d 1172 (Wash. Ct. App. 1989); *South*

*Carolina Medical Malpractice Liab. Ins. Joint Underwriting Ass'n v. Ferry*, 354 S.E.2d 378 (S.C. 1987).

In determining whether sexual assault by a dentist arose out of rendering or failing to render "professional services," the decisions that have excluded coverage relied on *Marx v. Hartford Accident & Indem. Co.*, 157 N.W.2d 870 (Neb. 1968),[5] which stated:

> "[A medical malpractice] insurer's liability is . . . limited to the performing or rendering of "professional" acts or services. Something more than an act flowing from mere employment or vocation is essential. The act or service must be such as exacts the use or application of special learning or attainments of some kind. . . . *In determining whether a particular act is of a professional nature or a "professional service" we must look not to the title or character of the party performing the act, but to the act itself.*"

*Marx*, 157 N.W.2d at 871–872 (emphasis added; citations omitted). It has therefore been recognized that "professional services" does not include all forms of a professional's conduct simply because a person is a professional. *See Niedzielski*, 589 A.2d at 131–132; *Blakeslee*, 771 P.2d at 1176–1177; *Ferry*, 354 S.E.2d at

---

[5] In *Marx v. Hartford Accident & Indem. Co.*, 157 N.W.2d 870 (Neb. 1968), an employee-technician of the insured health care professional mistakenly poured benzene instead of water into a sterilization container while in the process of refilling a hot water sterilizer. *Id.* at 871. The Nebraska Supreme Court held that the act that caused the damage did not constitute a "professional service," despite having flowed from the technician's employment by the professional, and concluded that there was no coverage under the professional's malpractice policy. *Id.* at 871–872.

380. "[T]here must be a causal relationship between the alleged harm and the complained-of professional act or service[;] that is, it must be a medical or dental act or service that causes the harm, not an act or service that requires no professional skill." *Roe*, 587 N.E.2d at 217. Similarly, we note that the mere presence of a patient in a professional's office "does not justify a characterization which would label every act occurring in that office a professional service or failure to provide a professional service." *Niedzielski*, 589 A.2d at 132.

Herget attempts to distinguish those cases that relied on *Marx* and excluded coverage for a dentist's sexual contacts with patients from *L.L.* and *Zipkin*. Herget argues that *Marx* created a more restrictive test than the "flowing from" language found in *L.L.* and *Zipkin*. Herget's argument, however, is unconvincing. *L.L.*, *Zipkin*, and the cases that cite *Marx* require a causal connection or nexus between the act performed by the professional as "a professional service" and the harm to the patient. *L.L.* and *Zipkin* do not suggest anything to the contrary. The valid distinction is that in *L.L.* and *Zipkin* it was the mishandling of the "transference phenomenon" that was the wrongful "professional service" — a professional service which, nonetheless, still required a causal connection with the patients' damages.

Herget argues, nonetheless, that Steven G. and Jeremy Barrett's injuries flow from the practice of dentistry because of the involvement of anesthesia in the sexual assaults. In support of that argument, Herget cites sec. 447.02(1)(h), Stats. (1987–88) (presently renumbered sec. 447.01(8)(d), Stats.), which stated that "any person is deemed to be 'practicing dentistry' within the meaning of this chapter who . . .

689

[a]dministers anesthetics, either general or local, within the meaning of this chapter, while performing or claiming to perform dental services." We reject Herget's argument, however, due to its failure to draw the critical distinction between injury resulting from anesthesia and injury resulting from sexual assault.

In *Blakeslee*, a dentist sexually assaulted a patient "during" the dentist's treatment of the patient "and with the aid of nitrous oxide." *See* 771 P.2d at 1176. The *Blakeslee* court concluded that the dentist's use of nitrous oxide, "although admittedly a professional service," was not a proximate cause of the injuries the patient suffered, nor did the dentist's sexual contact with the patient "arise[ ] out of the rendering or failure to render [a] professional service[ ]." *Id.* at 1177. Similarly, according to the complaints filed by the plaintiffs here, the damages alleged are based on the sexual assaults, not on the use of anesthesia.

The cases that have found a professional insurer liable where the professional had sexual contact with a patient are distinguishable. Most often, those cases considered professional liability of mental health care providers. *See, e.g., L.L.*, 122 Wis. 2d 457–463, 362 N.W.2d 175–178; *Zipkin*, 436 S.W.2d 753. Professional liability for sexual contact with patients also has been found in cases involving professionals outside the mental health field in situations where the sexual contact related to, or was inseparable from, the services provided. *See St. Paul Fire & Marine Ins Co. v. Asbury*, 720 P.2d 540, 541–542 (Ariz. Ct. App. 1986) (gynecologist's sexual assault of patients during gynecological exams covered under policy); *compare Hirst v. St. Paul Fire & Marine Ins. Co.*, 683 P.2d 440, 443–444 (Idaho Ct. App. 1984) (doctor's sexual assaults of patient

where treatment sought was for injured hand not covered as a "professional service").

We have found only one case that held there was coverage for a dentist who sexually assaulted a patient, but that case is also clearly distinguishable. In *St. Paul Fire and Marine Ins. Co. v. Shernow*, 610 A.2d 1281 (Conn. 1992), a dentist sexually assaulted his patient after administering nitrous oxide to her. The patient sustained serious physical injuries as a direct result of the nitrous oxide. *See id.* at 1282–1283 n.3. The court noted that the drug had "had a direct relationship to the [dental procedure] in progress" and concluded that the dentist's negligence with respect to the nitrous oxide that severely injured the patient constituted professional negligence that was covered by the professional liability policy. *Id.* at 1284.

Finally, Herget cites *Public Serv. Mut. Ins. Co. v. Goldfarb*, 425 N.E.2d 810 (N.Y. 1981), in support of his claim for coverage based on a dentist's sexual contact with a patient. *Goldfarb*, however, merely decided that the insurance company had a duty to defend the dentist based on the specific policy language that specifically covered claims " 'resulting from any claim or suit based upon . . . [m]alpractice, error, negligence or mistake, *assault*, slander, libel [or] *undue familiarity*.' " *Id.* at 813 (emphasis added). St. Paul's policy here, however, does not contain such language and, therefore, *Goldfarb* has no applicability to this case.[6]

---

[6] St. Paul makes an alternative argument that, based on public policy considerations, *see K.A.G. v. Stanford*, 148 Wis. 2d 158, 164–165, 434 N.W.2d 790, 793 (Ct. App. 1988) (sexual assault of minor an act by the perpetrator intended to cause harm to the minor as a matter of law and thus excluded from coverage under homeowner's insurance policy), the fortuity principle precludes Herget's recovery under the facts pertaining

## IV. CONCLUSION

We conclude that Herget's sexual assaults of his patients, as a matter of law, are not covered by the language of the St. Paul professional liability insurance policy. Additionally, we conclude that Herget must reimburse St. Paul for the portion of the settlements it paid to the plaintiffs. Therefore, we affirm the judgment in Steven G.'s case, but we reverse the judgment in Barrett's case and remand for judgment to be entered in favor of St. Paul.

*By the Court.*—Judgment affirmed; judgment reversed and cause remanded with directions.

---

to the sexual assaults of his patients, *see Northwestern National Ins. Co. v. Nemetz*, 135 Wis. 2d 245, 257, 400 N.W.2d 33, 38 (Ct. App. 1986) ("insurers should not be forced to cover losses that are not fortuitous"). Because we conclude that there is no coverage based on the language of the policy, we need not address this alternative argument. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).