B.N., Plaintiff-Appellant,

v.

Guy N. Giese and Joann L. Giese, Defendants,

Economy Preferred Insurance Company,
Defendant-Respondent.

Court of Appeals

*No. 03–2005. Submitted on briefs February 23, 2004.—Decided June 2, 2004.*

2004 WI App 137

(Also reported in 685 N.W.2d 568.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Jodi L. Habush, SB*, of *Habush, Habush & Rottier*, of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Donald H. Piper*, and *Amy E. Wochos*, of *Piper & Schmidt*, of Milwaukee.

Before Brown, Nettesheim and Snyder, JJ.

¶ 1. NETTESHEIM, J. This is an insurance coverage dispute. The circuit court action stemmed from the 1994 sexual assault of B.N. by her uncle, Guy N. Giese, when B.N. was eleven years old. B.N. brought this action against Guy, his wife, Joann L. Giese, and Joann's homeowners insurer, Economy Preferred Insurance Company (Economy). The issue is whether the Economy policy provides coverage for B.N.'s claim alleging negligent infliction of emotional distress to B.N. by Joann. The allegation was premised on Joann's conduct towards B.N. following the sexual assault. At summary judgment, the trial court ruled that Joann's conduct was intentional and therefore excluded from coverage under the Economy policy. B.N. appeals.

¶ 2. Because Joann's actions were intentional and a person in Joann's position would have reasonably expected her actions to harm B.N., we conclude as a matter of law that Joann intended her actions to harm B.N. We therefore uphold the trial court's grant of summary judgment in favor of Economy.

243

## BACKGROUND

¶ 3. The underlying facts are undisputed. During October 1995, a jury found Guy guilty of two counts of first-degree sexual assault of his niece, B.N. The criminal court sentenced Guy to ten years in prison. B.N. was eleven years old at the time of the assault.

¶ 4. B.N. commenced this civil action on August 23, 2002. In an amended complaint, B.N. alleges that Guy engaged in intentional acts of intimate sexual contact with her while she was in bed with Guy and his wife, Joann. Later, B.N. told her parents about the incident, and they arranged for B.N. and the family to meet with a psychologist who then reported the allegations to the police. With respect to the claim of negligent infliction of emotional distress against Joann, the complaint alleges:

> Following said disclosure, the defendant Joann L. Giese, previously a person that [B.N.] had loved, admired and trusted, engaged in thoughtless and needlessly cruel conduct in disregard of the plaintiff's young age and emotional state, including efforts to alienate the plaintiff from her extended family and her denial of conversations she had previously had with [B.N.], including those concerning her husband's drinking problem.

> The defendant Joann L. Giese's inappropriate conduct directed against a then eleven year old child directly and proximately caused the plaintiff to suffer emotional distress, including a sense of betrayal as well as extreme guilt and sadness over the breakup of her family, which has resulted in psychological injuries permanent in nature and which include expenses for medical and psychological treatment relating to the plaintiff's subsequent suicide attempts, hospitalizations and counseling needs.

¶ 5. In its answer to B.N.'s amended complaint, Economy affirmatively defended on the grounds that its policy did not afford liability coverage to Joann. Economy followed with a motion for summary and declaratory judgment contending that Joann's acts were precluded by the intentional acts exclusion provision of the policy.[1]

¶ 6. At a motion hearing on May 27, 2003, the trial court granted Economy's motion for summary judgment. The trial court entered an order for summary and declaratory judgment in favor of Economy on June 18, 2003.

¶ 7. B.N. appeals.

## DISCUSSION

¶ 8. Our standard of review is de novo on two levels. First, when reviewing a summary judgment, we perform the same function as the trial court and our review is de novo. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). On summary judgment, the inferences to be drawn from the underlying facts contained in the moving party's material should be viewed in the light most favorable to the party opposing the motion. *Grams v. Boss*, 97 Wis.

---

[1] Economy additionally defended on the grounds that Joann's conduct was not an "occurrence" under the policy and that B.N.'s claims were also precluded by the exclusion for bodily injury and property damage "arising out of . . . mental abuse, or any sexual act, including but not limited to molestation, incest or rape." Economy renews these additional coverage defenses on appeal. Because we conclude that Joann's actions were intentional as a matter of law and therefore not covered by the Economy policy, we need not reach these additional arguments.

2d 332, 338–39, 294 N.W.2d 473 (1980). "If the material presented on the motion is subject to conflicting interpretations or reasonable people might differ as to its significance, it would be improper to grant summary judgment." *Id.* at 339.

¶ 9. Second, the interpretation and application of an insurance policy provision to undisputed facts is a question of law, which also presents a de novo standard of review. *Steven G. v. Herget*, 178 Wis. 2d 674, 684, 505 N.W.2d 422 (Ct. App. 1993). When construing or applying an insurance policy, the policy must be "interpreted from the standpoint of what a reasonable person in the position of the insured would have understood." *Id.* (citation omitted).

¶ 10. Economy does not dispute that its policy providing coverage to Joann was in effect at the time of Guy's sexual assault of B.N. However, Economy denied coverage under the "intentional-acts" exclusion which bars coverage for bodily injury or property damage "which may reasonably be expected to result from the intentional or criminal acts of an insured person, or which are in fact expected, anticipated, or intended by an insured person." As noted, the trial court concluded that Joann's actions were intentional as a matter of law and thus excluded from coverage.

¶ 11. In Wisconsin, an "intentional-acts" exclusion precludes coverage only where the insured acts intentionally and intends some harm or injury to follow from the act. *Loveridge v. Chartier*, 161 Wis. 2d 150, 168, 468 N.W.2d 146 (1991) (citing *Raby v. Moe*, 153 Wis. 2d 101, 110, 450 N.W.2d 452 (1990)).

246

An insured intends to injure or harm another if he "intend[s] the consequences of his act, or believe[s] that they are substantially certain to follow." In other words, intent may be actual (a subjective standard) or inferred by the nature of the insured's intentional act (an objective standard). Therefore, an intentional-acts exclusion precludes insurance coverage where an intentional act is substantially certain to produce injury even if the insured asserts, honestly or dishonestly, that he did not intend any harm.

*Loveridge*, 161 Wis. 2d at 168 (citations omitted). This "intentional-acts" exclusion precludes coverage even if the harm that occurs is different in character or magnitude from that intended by the insured. *Id.* at 169.

¶ 12. B.N. contends that the trial court erred in granting summary judgment because the issue of intent is ordinarily a question of fact to be reserved for a jury. *See id.* "However, a court may infer that an insured intended to injure or harm as a matter of law (an objective standard): 'if the degree of certainty that the conduct will cause injury is sufficiently great to justify inferring intent to injure as a matter of law.'" *Id.* (citation omitted). There is no bright-line rule to determine when intent should be inferred as matter of law; each set of facts must be considered on a case-by-case basis—the more likely harm is to result from certain intentional conduct, the more likely intent to harm may be inferred as a matter of law. *Id.* at 169–70.

¶ 13. Here, B.N. alleges that Joann "engaged in thoughtless and needlessly cruel conduct in disregard of the plaintiff's young age and emotional state, including efforts to alienate the plaintiff from her extended family and her denial of conversations she had previously had with [B.N.], including those concerning her husband's

drinking problem." In arguing for coverage, B.N. points out that these allegations do not say that Joann intended to cause injury to B.N. or that Joann's actions were substantially certain to produce injury. Rather, B.N. argues that Joann's actions, as pled, "were perhaps irresponsible or not properly mindful of the plaintiff's young age and fragile emotional state but were not meant to cause harm to her."

¶ 14. However, as we have noted, a court may infer that the insured intended to injure or harm as matter of law if the facts, viewed objectively, demonstrate a sufficient degree of certainty that the insured's conduct will cause injury or harm. *Id.* at 169. Therefore, the mere fact that B.N. does not allege that Joann intended the harm or that Joann's conduct was not substantially certain to produce the harm does not control the question. Rather, we look to the core conduct itself and then objectively determine whether the conduct satisfies the test.

¶ 15. B.N. argues that Joann's conduct in this case does not allow for the requisite degree of certainty to allow for an inference of Joann's intent to harm as a matter of law. In support, B.N. relies on the holdings of *Gouger v. Hardtke*, 167 Wis. 2d 504, 514–15, 517–18, 482 N.W.2d 84 (1992), and *Loveridge*, 161 Wis. 2d at 161–62, where the reviewing courts held that intent could not be inferred as a matter of law. However, the nature of the conduct in those cases was much more ambiguous than Joann's alleged conduct in this case.

¶ 16. In *Gouger*, the injury occurred when two high school friends engaged in "hassling and teasing one another in a welding shop class." *Gouger*, 167 Wis. 2d at 508. At one point, Gouger threw a piece of soapstone at his friend, Hardtke, striking him in the head. *Id.* Hardtke then turned, saw Gouger laughing, and picked

up a piece of soapstone and threw it back at Gouger. The soapstone struck Gouger in the eye, damaging his cornea. *Id.* The trial court granted summary judgment based on its finding that Hardtke's conduct in throwing the soapstone was substantially certain to result in some injury and that it could infer intent as a matter of law. *Id.* at 509–10.

¶ 17. The supreme court in *Gouger* reversed the trial court's ruling that the conduct was intentional as a matter of law, stating:

> The facts in this case do not warrant inferring as a matter of law that Hardtke intended to injure Gouger. The conduct of throwing a piece of soapstone at another person, even with the intent of hitting that person, is not so substantially certain to cause injury that a court may infer an intent to injure. Indeed, in light of the fact that Hardtke and Gouger were friends, it is equally or perhaps more reasonable to infer that Hardtke did not intend to injure Gouger.

> . . . .

> In this case, the "horseplay" nature of the conduct in question, the fact that Gouger and Hardtke were friends at the time, and Hardtke's inconsistent pleading stating that he did not act intentionally cast sufficient doubt on Hardtke's credibility to create a genuine issue of material fact.

*Id.* at 514–15, 517–18.

¶ 18. Likewise, in *Loveridge*, the relationship between the plaintiff and the defendant undermined a finding of intentional conduct as a matter of law. In *Loveridge*, the plaintiff, Loveridge, and the defendant, Chartier, had engaged in consensual sexual contact including cunnilingus. *Loveridge*, 161 Wis. 2d at 162. Loveridge was later diagnosed as having the herpes

simplex virus. *Id.* at 163. Chartier had a history of cold sores and had one on his mouth at least one of the times he performed cunnilingus on Loveridge. *Id.* The insurer argued that Chartier intended to injure Loveridge as a matter of law, notwithstanding her consent, because she was a minor at the time of the contact and thus Chartier's conduct violated the criminal law. *Id.* at 167. The supreme court rejected the insurer's coverage defense because: (1) intent to injure was not an element of the crimes committed by Chartier, and (2) consensual sexual intercourse between an adult and a sixteen- or seventeen-year-old does not create a "substantial risk of injury or death." *Id.* at 174 (citation omitted).

¶ 19. We reject B.N.'s attempts to liken this case to *Gouger* and *Loveridge*. Unlike *Gouger*, Joann's actions toward B.N. were not the result of "horseplay" between friends. *See Gouger*, 167 Wis. 2d at 517. To the contrary, B.N.'s allegations demonstrate that the trusting relationship between Joann and B.N. had turned hostile. And, unlike *Loveridge*, Joann's "thoughtless and needlessly cruel conduct in disregard of B.N.'s young age and emotional state" was not conduct to which B.N. had consented. *See Loveridge*, 161 Wis. 2d at 162.

¶ 20. Objectively viewed, Joann's alleged actions toward B.N., an eleven-year-old niece, are such that a reasonable person would have expected such conduct to result in some kind of injury or harm to B.N. Under the objective standard, there is no ambiguity as to Joann's intent. That the harm to B.N. may have been different in character or magnitude from that expected by Joann does not bar application of the intentional acts exclusion. *See id.* at 169.

## CONCLUSION

¶ 21. We hold that Joann's conduct was intentional as a matter of law and, as such, falls under the "intentional-acts" exclusion. We uphold the trial court's grant of summary judgment in favor of Economy.

*By the Court.*—Judgment affirmed.