Michael EDDY and Lisa Eddy, Plaintiffs,

v.

B.S.T.V. INC. d/b/a Realty Executives, General Insurance Company of America and Bruce Kirchoff, Defendants-Third-Party Plaintiffs-Appellants,†

CHASE MANHATTAN MORTGAGE CORPORATION, Defendant,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY and Indiana Insurance Company, Intervenors-Respondents,

Heather WINSER, Third-PartyDefendant.

Court of Appeals

*No. 04–1664. Submitted on briefs February 8, 2005.—Decided March 8, 2005.*

2005 WI App 78

(Also reported in 696 N.W.2d 265.)

† Petition to review denied 6-1-2005.

On behalf of the defendants-third-party plaintiffs-appellants, the cause was submitted on the briefs of *Michael R. Vescio* of *O'Hagan, Smith & Amundsen, LLC,* of Greenfield.

On behalf of American Family Mutual Insurance Company, intervenor-respondent, the cause was submitted on the brief of *Terry J. Booth* of *Piper & Schmidt*, of Milwaukee.

On behalf of Indiana Insurance Company, intervenor-respondent, the cause was submitted on the brief of *Patrick W. Brennan* of *Crivello, Carlson & Mentkowski*, of Milwaukee.

Before Fine, Curley and Kessler, JJ.

¶ 1. FINE, J. B.S.T.V., Inc. d/b/a Realty Executives, General Insurance Company of America, and Bruce Kirchoff appeal the trial court's orders granting summary judgment to American Family Mutual Insurance Company and Indiana Insurance Company, declaring that neither American Family nor Indiana Insurance provided coverage to Realty Executives in connection with a lawsuit brought against Realty Executives and Kirchoff, its employee, by Michael and Lisa Eddy. General Insurance also insured Realty Executives, and its coverage is not an issue on this appeal. The issue presented is whether the professional-services-exclusion clauses in the American Family and Indiana Insurance policies issued to Realty Executives applied to the Eddys' claims that Realty Executives and Kirchoff did not discover and disclose to them that the house they purchased through Realty Executives was contaminated by mold. The trial court ruled that the exclusion clauses applied. We affirm.

¶ 2. Our review of a trial court's grant of summary judgment is *de novo. Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–317, 401 N.W.2d 816, 820–821 (1987). Additionally, unless there are factual

disputes, application of insurance policies and their provisions is a legal issue that we also review *de novo. Smith v. Katz,* 226 Wis. 2d 798, 805, 595 N.W.2d 345, 349 (1999). When an insurance company disputes coverage and asserts that it has no duty to defend or indemnify the policy holder against certain claims, we are limited to the four corners of the complaint in determining whether there is coverage. *Fireman's Fund Ins. Co. v. Bradley Corp.,* 2003 WI 33, ¶ 19, 261 Wis. 2d 4, 18, 660 N.W.2d 666, 673. When an insurance policy is clear on its face, we apply it, as we do all contracts, as it reads. *See Dykstra v. Arthur G. McKee & Co.,* 92 Wis. 2d 17, 38, 284 N.W.2d 692, 702–703 (Ct. App. 1979) (unambiguous contracts are enforced as they are written); *Smith,* 226 Wis. 2d at 806, 595 N.W.2d at 350 (insurance polices are contracts that are " 'governed by the same rules of construction that apply to other contracts' ") (quoted source omitted).

¶ 3. The Eddys' amended complaint alleges the following that is material to our analysis:

- The Eddys are married to one another.

- Kirchoff is a Wisconsin-licensed real estate broker, employed by Realty Executives.

- Chase Manhattan Mortgage Corporation owned a home in Lannon, Wisconsin, as the result of a mortgage foreclosure.

- "During early 2001 the home experienced a catastrophic pipe failure resulting in water collecting throughout the home including the crawl space below the home and the walls."

- The home was infested with mold contamination, and Chase Manhattan Mortgage knew it.

511

- "During early 2001 Defendant Chase Manhattan Mortgage Corporation and/or its agents hired tradesmen to conceal and fix the pipes while failing to remediate the hazardous condition created by the water including the hazard of the home to become contaminated by mold."

- Realty Executives had a listing agreement with Chase Manhattan Mortgage to sell the home.

- Dale Zimmer contracted to buy the home in the spring of 2001 but "discovered defects" in the home and "was relieved by Chase Manhattan Mortgage Corporation of his contract."

- "During the spring of 2001 real estate agent Michael Reed advised both defendant Bruce Kirchoff and his principal, defendant Chase Manhattan Mortgage Corporation in writing, that the home contained multiple defects and provided both defendants with the Notice attached as Exhibit 'A.' "

- The "Exhibit 'A' " is a "Notice Relating to Offer to Purchase" (uppercasing omitted) that indicated on its face that it was drafted by "Mike Reed Realty Executives," although the "Party Giving Notice" is "Dale Zimmer."

- The Notice designated as "Exhibit 'A' " is dated June 11, 2001, and recites: "Buyer is giving notice that said inspection has failed due to many serious defects such as rotting flooring, improper wiring, plumbing, venting, serious signs of moisture."

- "During the summer of 2001, the [Eddys] were shown the home by agents of Chase Manhattan Mortgage Corporation but were not told either

512

orally or in writing that the home had 1.) suffered catastrophic water damage, or 2.) that the damage was not visible or 3.) that the home was contaminated by mold or 4.) that the home had multiple other defects or 5.) that the home had failed a home inspection and that both defendants were in possession of Exhibit 'A.' "

- The Eddys bought the home on July 20, 2001, and were not given either "a property condition report" or a copy of "Exhibit 'A.' "

- The home was contaminated by toxic mold, and the Eddys suffered serious health and financial consequences.

Additionally, paragraph 14 of the amended complaint alleged: "That agents of Realty Executives including Bruce Kirchoff have been provided with training in identifying mold and mold related hazards and of their obligation under Wisconsin law to disclose material defects to home buyers." Although not set out *in haec verba,* we assume that the "agents of Chase Manhattan Mortgage Corporation" referred to in the third-from-last bulleted paragraph encompasses Realty Executives and Kirchoff.

¶ 4. Both the American Family and the Indiana Insurance policies issued to Realty Executives have similar professional-services exclusions.

¶ 5. The Indiana Insurance policy in effect from March 28, 2001, through March 28, 2002, provides, as material here: "This insurance does not apply to: ... 'Bodily injury', 'property damage', 'personal injury' or 'advertising injury' due to rendering or failure to render any professional service. This includes but is not lim-

ited to: ... Services while you are acting in a fiduciary or representative capacity including but not limited to, Real Estate Agents."

¶ 6. American Family did not insure Realty Executives before March 28, 2002, and the parties dispute whether, as a result, there would nevertheless be coverage for the Eddys' claims if the exclusion clause did not apply. We do not have to resolve that dispute, however, or address the other grounds asserted by American Family and Indiana Insurance for affirming the trial court's orders, because, as we will see, the exclusion clauses in both companies' policies bar coverage for the injuries claimed by the Eddys. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).

¶ 7. There are three American Family policies that the appellants contend provide coverage to Realty Executives, and they each have the same clause, which, as material here, provides: "This insurance does not apply to: ... PROFESSIONAL LIABILITY. We will not pay for damages due to bodily injury or property damage arising out of the rendering or the failure to render professional services by any insured who is a(n) . . . insurance agent or real estate agent." (Bolding omitted.)

¶ 8. The core of the Eddys' complaint against Realty Executives and Kirchoff is that they sold the Eddys a home that they knew or should have known was infested with mold contamination. Both Realty Executives and Kirchoff are in the home-selling business. They are "real estate agents" as that phrase is used in all the policies. Thus, their sale to the Eddys of the contaminated home was in the course of their "rendering . . . professional services" as real estate agents.

514

¶ 9. Realty Executives and Kirchoff contend, however, that paragraph 14 of the amended complaint asserts a claim against them that removes their potential liability from the policies' exclusions because, they argue, it posits a duty that extends beyond their rendering professional services as real estate agents. They rely on the federal district court decision in *Chapman v. Mutual Service Casualty Insurance Co.*, 35 F. Supp. 2d 693 (E.D. Wis. 1999), which concerned a claim by a family injured by improperly remediated lead paint in a house sold to them by a real-estate company. After the house failed an initial lead-paint inspection, the real-estate company got a painter to repaint the outside of the house. *Id.*, 35 F. Supp. 2d at 695. After the repainting, the house passed inspection. *Ibid.* The family moved in and soon their son suffered lead-paint poisoning. *Ibid.* The family claimed that the real-estate company was negligent in its "hiring, supervising and inspecting the work of the paint contractors . . . and the inspector[, and its] failure to warn and/or notify the [family] of lead based paint and its hazards," and related alleged failings in connection with the lead-based paint. *Ibid.* The judge held that the real-estate company's business-liability policy covered the family's claims because, in the judge's view, those claims did not encompass "professional service" as that phrase was used in the policy's list of exclusions. *Id.*, 35 F. Supp. 2d at 696–698.

¶ 10. As material here, the *Chapman* policy excluded from coverage: " 'Bodily injury,' 'property damage,' 'personal injury' or 'advertising injury' due to rendering or failure to render any professional service. This includes but is not limited to: ... Supervisory, inspection or engineering services." *Id.*, 35 F. Supp. 2d at 696. Unlike the policies here, however, the policy in

*Chapman* did not specifically reference professional services rendered as a "real estate" agent, and the district judge held that the *Chapman* policy's use of the phrase "professional service" did not apply to the " 'physical or manual' " work of painting, inspecting, supervising painting or inspecting, or warning about the dangers of lead paint. *Id.*, 35 F. Supp. 2d at 698 (quoted source omitted). Rather, in the judge's view, for something to be "professional services" it had to " 'involv[e] specialized knowledge, labor or skill which is predominantly mental or intellectual.' " *Ibid.* (brackets added; quoted source omitted). Even allowing for this somewhat elitist view of labor-classification, which we reject, it is clear that in this case the Eddys have alleged a breach of Realty Executives's and Kirchoff's professional-service responsibilities as *real estate agents,* and thus the exclusions apply.

¶ 11. Paragraph 14 of the Eddys' amended complaint has two elements, and alleges:

- "That agents of Realty Executives including Bruce Kirchoff have been provided with training in identifying mold and mold related hazards"; and

- "That agents of Realty Executives including Bruce Kirchoff have been provided with training ... [concerning] their obligation under Wisconsin law to disclose material defects to home buyers."

Neither of these imbricated allegations removes the claims asserted by the Eddys against Realty Executives or Kirchoff from the exclusion clauses.

¶ 12. As the trial court recognized, the first bulleted allegation is prefatory—it would be a material allegation if either knowledge of mold or an ability to

identify it was a predicate for an asserted liability. Here, of course, the asserted liability is something that it is claimed Realty Executives and Kirchoff did not do—warn the Eddys that the home they were selling was infested with mold. Thus, any "training" in mold identification, if material in this case, kicks in *only* because the defendants are accused of not doing something they should have done while "rendering" professional services as real-estate agents.

¶ 13. As the trial court also recognized, the second bulleted allegation is also prefatory—it kicks in only because of the claim that Realty Executives and Kirchoff violated a statute, presumably WIS. STAT. § 452.133, referred to by the parties, which establishes the professional-services duties of real-estate brokers to not only their clients but also, insofar as subsection (1) is concerned "to all parties to a transaction." (Small capitals omitted.) Specifically, § 452.133(1)(c) requires every real-estate broker to: "Disclose to each party all material adverse facts that the broker knows and that the party does not know or cannot discover through reasonably vigilant observation, unless the disclosure of a material adverse fact is prohibited by law." Here again, any "training" about their "obligation under Wisconsin law to disclose material defects to home buyers," if pertinent in this case, is so *only* because they are accused of violating § 452.133(1)(c), which applies only to real-estate professionals while "rendering" professional services as real-estate agents.

¶ 14. *Steven G. v. Herget*, 178 Wis. 2d 674, 505 N.W.2d 422 (Ct. App. 1993), upon which Realty Executives, Kirchoff, and General Insurance also rely, supports the trial court's orders. There, a dentist was sued by child-victims who were sexually abused by him while they were in his dentist's chair under anesthesia. *Id.*,

178 Wis. 2d at 679–680, 505 N.W.2d at 424. The dentist's professional-liability carrier sought a declaration that its policy did not apply because the sexual assaults were not included in the insuring agreement, which "provided 'protection against professional liability claims which might be brought against you in your professional practice as a dentist,' covering 'damages resulting from . . . providing or withholding of professional services.' " *Id.*, 178 Wis. 2d at 680, 505 N.W.2d at 424. We agreed. *Id.*, 178 Wis. 2d at 684–692, 505 N.W.2d at 426–429. We noted that " 'professional services' does not include all forms of a professional's conduct simply because a person is a professional." *Id.*, 178 Wis. 2d at 688, 505 N.W.2d at 427. Rather, " 'there must be a causal relationship between the alleged harm and the complained-of professional act or service.' " *Id.*, 178 Wis. 2d at 689, 505 N.W.2d at 427 (quoted source and brackets omitted). This case presents the obverse: Realty Executives and Kirchoff are being sued precisely because of what they did or did not do *qua* real-estate professionals. Accordingly, the policy exclusions apply.

*By the Court.*—Orders affirmed.