COURT OF APPEALS
DECISION
DATED AND FILED

April 16, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP2148**

STATE OF WISCONSIN

Cir. Ct. No. 2009FA106

IN COURT OF APPEALS
DISTRICT IV

IN RE THE MARRIAGE OF:

JULIE ANN HYNEK,

    JOINT-PETITIONER-RESPONDENT,

 V.

CHRISTOPHER MICHAEL HYNEK,

    JOINT-PETITIONER-APPELLANT.

    APPEAL from an order of the circuit court for Richland County: WILLIAM ANDREW SHARP, Judge. *Affirmed*.

    Before Blanchard, Kloppenburg, and Graham, JJ.

    **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purpose specified in** WIS. STAT. RULE 809.23(3).

¶1    PER CURIAM.    Christopher Hynek appeals a post-divorce order that denied his motions for contempt and enforcement of a stipulation on child support.  We conclude that the circuit court properly denied the motions on the grounds that the stipulation was nonfinal and, therefore, not binding.  We also reject Hynek's arguments that Hynek's ex-wife, Julie Knoble, is guilty of criminal failure to support a child, that Knoble's attorney is liable for civil conspiracy, and that the circuit court judge was biased against Hynek.  Accordingly, we affirm.

## BACKGROUND

¶2    Hynek and Knoble were married in 1997 and divorced in 2012, at which time they had two minor children.   An amended judgment of divorce entered in 2013 ordered Knoble to pay Hynek $238 per month for child support.

¶3    In 2014, Hynek moved to modify child support.  During a hearing on the motion, Hynek asked for a break to allow the parties to discuss the possibility of a stipulation.  Following a recess, Knoble's attorney advised the court:

> I think … we've reached a financial stipulation.  I'm going to read that into the record now.  I have started to reduce it to writing.  I've emailed it to both parties and everyone's going to take a final review and we will forward it to the Court as an order.

¶4    The proposed stipulation established updated annual income amounts for each of the parties that would have resulted in a new monthly child support obligation of $495.15.   It also addressed the exchange of financial information for annual adjustments going forward.  The circuit court asked each of the parties whether the proposed stipulation read by counsel was acceptable, and each indicated that it was.  The court then thanked the parties "for being able to resolve this."

¶5    Following the hearing, the parties exchanged a series of emails discussing revisions to the proposed stipulation, but never signed a finalized stipulation sent to the court. Knoble attempted to pay the increased amount of child support, but the child support agency returned to her the money in excess of the order that it had on file.

¶6    In 2018, Hynek filed companion motions asking the court, among other things, to sign the proposed stipulation and award him back child support with interest from the date of the hearing, and to hold Knoble in contempt for failing to comply with the proposed stipulation. In the alternative, Hynek moved for a modification of child support based upon the statutory formula.

¶7    The circuit court entered an order prospectively increasing Knoble's child support obligation to $1,145 per month, but the court declined to award arrears or to find Knoble in contempt. The court deemed the question of the validity of the proposed stipulation to be moot based upon the new child support order and sua sponte ruled that the stipulation was in any event "void for laches."

¶8    Hynek moved for reconsideration, arguing that the proposed stipulation was enforceable because it satisfied the requirements of WIS. STAT. § 807.05 (2017-18)[1] and laches did not apply. Hynek further alleged that the circuit court exhibited bias against him by declining to award arrears. In denying the reconsideration motion, the court made a factual finding that the proposed stipulation read into the record was preliminary, not final. The court deemed that

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

3

finding to be dispositive of all Hynek's arguments in favor of arrears, which were premised upon the existence of a final stipulation.

¶9 Hynek, pro se, appeals, raising eight related issues: (1) whether the proposed stipulation read in open court is binding in its entirety under WIS. STAT. § 807.05; (2) whether any individual facts set forth in the proposed stipulation can be treated as controlling on the parties pursuant to case law; (3) whether the proposed stipulation could be nullified by the parties' subsequent negotiations over additional terms; (4) whether the circuit court erred in applying laches to his request for arrearages; (5) whether Knoble violated WIS. STAT. § 948.22 by failing to make payments in an amount that she should reasonably have known she was obligated to provide; (6) whether Knoble's attorney aided and abetted her client and committed civil conspiracy by reopening negotiations, rather than fulfilling her obligation to send the court an order to be signed; (7) whether the circuit court would err again by applying laches if the matter were remanded; and (8) whether there is evidence of judicial bias by the circuit court.

## DISCUSSION

¶10 As a threshold matter, we agree with the circuit court that most of Hynek's arguments are based upon the premise that the proposed stipulation read in open court was final with respect to the items it addressed. We therefore begin our analysis by considering whether we can sustain the circuit court's determination that the proposed stipulation was only preliminary.

¶11 Whether a stipulation was validly entered into is a question of law that we review de novo. *Steven G. v. Herget*, 178 Wis. 2d 674, 681-84, 505 N.W.2d 422 (Ct. App. 1993). Here, we conclude that the parties never entered into a final, binding stipulation.

4

¶12 Our determination is supported first by the language used by counsel when reading the proposed stipulation into the record. Counsel said that she *thought* the parties had reached a stipulation and that she had *started* to reduce it to writing. Further, she said that the parties were going to take a "final review" of the stipulation before forwarding an order to the court to sign. This plainly indicates that the parties had not yet agreed that the language of the proposed stipulation was final. Additional testimony and evidence that the parties continued negotiating after the hearing at which the proposed stipulation was introduced also supports the conclusion that the stipulation read into the record was conditioned upon final approval, and therefore not yet binding upon anyone.

¶13 In context, the fact that the court thanked the parties "for being able to resolve this" does not compel a contrary conclusion that the proposed stipulation was final. The court's comment can be reasonably understood as thanking the parties for their efforts at settlement, in anticipation that a final stipulation would be forthcoming. The court did not state on the record that it was adopting or approving the proposed stipulation.

¶14 We conclude that the preliminary and conditional nature of the proposed stipulation is dispositive with respect to the first, second, third, fourth, and seventh issues that Hynek raises on appeal. WISCONSIN STAT. § 807.05 provides that no agreement or stipulation is binding unless it is either made on the record and entered into the minutes or recorded by the recorder or made in writing and signed by the party to be bound. It does not follow that every agreement made on the record results in a binding stipulation. Here, the parties merely agreed that they had produced language for a proposed stipulation that would be subject to their final review. Because the parties conditioned entry of a written order on their final review of the proposed language but never provided final approval, no

binding stipulation was ever entered as to the specific terms of the parties' updated incomes, modification of child support, or future exchanges of financial information. Because no binding agreement on terms was entered in the first place, the effect of any subsequent negotiations or the potential application of laches to the enforcement of the terms in the proposed stipulation are meaningless. Finally, because the proposed stipulation never went into effect, no arrearages ever accrued.

¶15 As to Hynek's fifth and sixth issues, it appears that he is attempting to raise them for the first time on appeal. This court will generally not consider issues raised for the first time on appeal, so that we do not "blindside trial courts with reversals based on theories which did not originate in their forum." *Schonscheck v. Paccar, Inc.*, 2003 WI App 79, ¶¶10-11, 261 Wis. 2d 769, 661 N.W.2d 476. We do not see a sound reason here to depart from the general rule. Further, it is not clear what available remedy Hynek seeks with regard to his claims of Knoble's failure to support and counsel's conspiracy to aid and abet Knoble's failure to support. WISCONSIN STAT. § 948.22 is a criminal statute. Neither the circuit court nor this court could issue criminal charges in the context of a post-divorce proceeding. Similarly, we would have no authority to award damages for a civil conspiracy claim in the absence of a civil lawsuit to which counsel was party. To the extent that Hynek is citing these theories only in support of his other claims that the proposed stipulation should be enforced, they suffer from the same fatal defect that the stipulation was never finalized, and therefore did not create a legal support obligation with which either Knoble or counsel needed to comply.

¶16 Finally, Hynek contends that the circuit court was biased against him. Due process requires an impartial tribunal. *State v. Goodson*, 2009 WI App

6

107, ¶8, 320 Wis. 2d 166, 771 N.W.2d 385. In analyzing a claim of judicial bias, we begin with the presumption that a judge is fair, impartial, and capable of ignoring any potentially biasing influences. *State v. Gudgeon*, 2006 WI App 143, ¶20, 295 Wis. 2d 189, 720 N.W.2d 114. To overcome that presumption, a party must demonstrate the objective[2] existence of "actual bias" (*i.e.*, that the judge in fact treated the party unfairly), or the "appearance of bias" (*i.e.*, that under the circumstances "a reasonable person—taking into consideration human psychological tendencies and weaknesses—[would conclude] that the average judge could not be trusted to "'hold the balance nice, clear and true'"). *Id.* at ¶¶20-24 (quoted source omitted). Opinions formed by a judge based upon facts introduced or events occurring during the course of a current or prior proceeding involving a party do not constitute the basis for a bias or partiality motion unless they display "'a deep-seated favoritism or antagonism that would make fair judgment impossible.'" *State v. Rodriguez*, 2006 WI App 163, ¶36, 295 Wis. 2d 801, 722 N.W.2d 136 (quoted source omitted); *see also Liteky v. United States*, 510 U.S. 540, 555 (1994) (judicial rulings alone almost never constitute a valid basis for a partiality motion).

¶17 Hynek cannot demonstrate actual bias here because the circuit court's ultimate decision not to award arrearages was correct, and not unfair. Hynek has also not shown the appearance of bias, because he has not identified any circumstances here that would lead a reasonable person to believe that the average judge in these circumstances could not be trusted to be impartial toward

---

[2] Although there is also a due process concern if a judge is subjectively biased, that is a determination that can be made only by the judge. *State v. McBride*, 187 Wis. 2d 409, 414-15, 523 N.W.2d 106 (Ct. App. 1994).

him. Nor can we conclude that the judge's rulings as a whole display a deep-seated antagonism toward Hynek that would make fair judgment impossible when Hynek ultimately prevailed on his motion to prospectively increase child support.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.